**SECURITY BANK AND
TRUST COMPANY**

v.

**Raymond BEAUFORT et al.**

**No. 86–50 Appeal.**

Supreme Court of Rhode Island

April 13, 1988

Richard M. Peirce, Roberts, Carroll, Feldstein & Tucker, Providence, for plaintiff.

Daniel K. Flaherty, Warwick, Thomas A. Lynch, William F. Hague, Dick & Hague, Ltd., Stephen A. Gordon, Gordon & Levitt, Providence, for defendants.

OPINION

FAY, Chief Justice.

This action arose from a construction-loan agreement between the mortgagors, Raymond and Louise Beaufort (the Beauforts), and the mortgagee, Security Bank and Trust Company (Security or bank). This appeal comes to us from a Superior Court interpleader judgment that distributed the foreclosure surplus on the property securing the construction loan. We affirm.

Security filed this interpleader action in Superior Court against defendants Edward Scowcroft (Scowcroft), the Beauforts, O'Connor Lumber Co. of Rhode Island, Inc. (O'Connor Lumber), and Allied Concrete Forms, Inc. (Allied), to determine who among defendants was entitled to the foreclosure surplus. The Beauforts counterclaimed against Security, alleging that Security had breached their loan agreement. O'Connor Lumber brought a cross-claim against the Beauforts, alleging that the Beauforts owed it money for materials and labor. The parties stipulated to various facts, and relying thereon, the judge ruled on the interpleader action that Scowcroft was entitled to the surplus because he owned the equity of redemption in the foreclosed property. The trial judge proceeded to hear evidence on the counterclaim and the cross-claims without a jury. During the trial the judge granted Allied leave to amend its pleadings to bring a cross-claim against the Beauforts, with Allied alleging, like O'Connor Lumber, that it was owed money for materials and labor. At the conclusion of this trial, the court entered judgment in favor of both O'Connor Lumber and Allied on their direct claims against the Beauforts for $9,871.36 and $2,084.54 plus interest and costs respectively.

The facts, based on the stipulations and the evidence put before the court, are as follows. The Beauforts owned real estate located at 19 Jerome Avenue in Warwick,

Rhode Island. In October of 1977 Security agreed to lend Beaufort $42,000 to construct a dwelling on that property. The Beauforts in return executed a mortgage to Security, which was duly recorded on October 31, 1977.

The written construction agreement between Security and the Beauforts was not structured in the traditional construction-loan format but was merely a statutory mortgage with statutory covenants.[1] The written agreement did not provide any terms governing the disbursement of the mortgage proceeds for constructing the dwelling. The parties, however, permitted the introduction of parol testimony that revealed further terms. The parties had orally agreed that on Beaufort's request Security would release mortgage proceeds for construction on the condition that Security's loan committee inspect the premises to determine if sufficient equity in the property existed to secure the requested proceeds.

Pursuant to this agreement Security advanced proceeds to the Beauforts in three installments: two for $5,000 and one for $12,000. In April or May 1978 Mr. Beaufort requested the remaining $20,000 from Security. Mr. Beaufort told the bank that he needed the money to stop the secondary mortgagee from foreclosing on the property. A second mortgage on the property was issued to Scowcroft, from whom the Beauforts had originally purchased both the property at issue and some adjoining lots. The Beauforts financed this purchase by conveying a second-mortgage interest in the property at issue and a first-mortgage interest in the adjoining lots to Scowcroft. The second mortgage was recorded one minute after Security's first mortgage was recorded. It is unclear whether Security knew that this second mortgage existed before Mr. Beaufort requested the remaining mortgage proceeds.

At the time the Beauforts sought disbursement of the $20,000 balance from Security, their outstanding obligations relating to the project were in excess of $10,000. The Beauforts owed $9,871.36 to O'Connor Lumber for materials and services. In fact, before any mortgages were executed, the Beauforts, with the assent of a Security assistant vice president, had assigned $22,000 of the unreleased construction-loan proceeds to O'Connor Lumber. Additionally, the Beauforts owed Allied approximately $2,000 for pouring the dwelling's foundation. Although both of these parties were owed money, neither filed a mechanic's lien on the property.

Furthermore, the dwelling was only 60 percent complete when Mr. Beaufort requested the remaining mortgage proceeds. As noted above, Mr. Beaufort informed Security that he specifically intended to use $13,000 of these proceeds, not to complete the dwelling, but to eliminate the mortgage debt to Scowcroft. Security considered all these factors when determining whether to advance the requested proceeds. Security decided that the property's equity did not support the outstanding money owed and therefore refused to lend them the requisitioned $20,000.

In a final attempt to forestall Scowcroft's plans to exercise his power of sale on the property, Mr. Beaufort paid him $2,200 as reimbursement for money Scowcroft had expended on legal fees. Nonetheless in July 1978 Scowcroft foreclosed on his mortgage and assumed the equity of redemption in the property. In January 1979 Security also foreclosed on the property. At this foreclosure Scowcroft bid and paid Security $42,000. Security kept $23,386.97 of the proceeds to satisfy the balance due on the construction loan and allocated $2,095.68 to satisfy the foreclosure expenses. Security deposited the surplus $16,517.37 in an interest-bearing escrow account.

Ruling on the interpleader action, the trial judge held that Scowcroft was entitled to the overage and further held in favor of O'Connor Lumber and Allied on their cross-claims against the Beauforts. The Beau-

---

1. General Laws 1956 (1969 Reenactment) § 34-11-20 provides for construction of statu-. tory mortgage covenants.

forts appeal these judgments, asserting that Security breached the loan agreement by refusing to disburse the remainder of the mortgage proceeds. Furthermore, they claim that even if Security acted pursuant to the contract, O'Connor Lumber is entitled to part of the surplus because the Beauforts assigned O'Connor Lumber a portion of the mortgage proceeds. They also appeal the trial justice's grant of leave to Allied that permitted it to bring a direct claim against the Beauforts, asserting that this action was barred by the statute of limitations. None of these arguments, however, convince this court that the trial justice's holding was incorrect.

Contending that the trial justice erred by denying their counterclaim against Security, the Beauforts claim that the trial justice considered irrelevant evidence when examining Security's duty to disburse the loan balance. In making his judgment, they assert specifically, the trial justice should have considered neither their secondary mortgage to Scowcroft nor their debts to third parties.

On this issue the trial justice found the following facts. Although the agreement between Security and the Beauforts was silent in regard to disbursement terms, the parties agreed that the bank would disburse proceeds when requested by the Beauforts subject to the bank loan committee's determination that sufficient equity in the property did exist. Therefore, he held that Security's disbursements of the proceeds were discretionary.

The trial justice also noted that O'Connor Lumber and Allied could impose liens on the property and that Scowcroft could foreclose on the second mortgage at any time. Additionally he found the record devoid of any evidence establishing that at the time Security refused to advance further funds the value of the property exceeded the amount of money that had been invested therein. Consequently, the trial justice held that because the bank did not act unreasonably in withholding the balance of the mortgage proceeds requested, it did not breach the loan agreement.

■ This court accords great weight to findings of fact of a trial justice sitting without a jury. *Warwick Musical Theatre, Inc. v. State*, 525 A.2d 905, 909 (R.I. 1987). We consistently hold that such findings will not be disturbed on appeal unless it is shown that the trial justice misconceived or overlooked relevant evidence or was otherwise clearly wrong. *In re Randy B.*, 486 A.2d 1071, 1073 (R.I.1985); *Fournier v. Fournier*, 479 A.2d 708, 715 (R.I.1984); *Traversa v. Smith*, 437 A.2d 1358, 1360 (R.I.1981).

■ After reviewing the record, we find that the trial justice was not clearly wrong when he held that the bank acted reasonably when it denied the Beauforts further funding. The agreement did not obligate the bank to forward funds regardless of other encumbrances, as the Beauforts contend; rather it provided that the bank could exercise its discretion reasonably. We agree that the bank's decision was reasonable.

Furthermore, the trial court's decision properly gave Scowcroft the foreclosure proceeds because he owned the equity of redemption in the property. Although the Beauforts assert that O'Connor Lumber was assigned these funds, neither O'Connor Lumber nor Allied preserved its interest by filing a mechanic's lien. Consequently, neither of these parties is entitled to these funds.

■ Finally, the Beauforts insist that the trial justice erred at trial when he granted Allied leave to amend its pleadings to include a cross-claim against the Beauforts. The Beauforts assert that this cause of action was barred by the statute of limitations. We find this argument wholly without merit.

Under the procedural rules of Superior Court, parties must plead all affirmative defenses, including the statute of limitations, in their pleadings. *LaBounty v. LaBounty*, 497 A.2d 302, 305 (R.I.1985); Super.R.Civ.P. 8(c). These defenses are waived if the parties fail to present defenses by motion or by answer. *LaBounty*, 497 A.2d at 305; Super.R.Civ.P. 12(h). A review of the record reveals that the Beau-

forts failed to raise the statute of limitations as a defense. Nonetheless the transcript reveals that the trial justice ruled this defense nugatory because testimony indicated that Mr. Beaufort continually acknowledged the debt, thereby eliminating the defense by renewing the cause of action with each acknowledgment. *See Rodriques v. Santos,* 466 A.2d 306, 310 (R.I. 1983). Concluding that adequate evidence supporting the trial justice's finding of an acknowledgment existed, this court rules that the statute-of-limitations defense is without merit.

For the foregoing reasons the appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers in the case are remanded to the Superior Court.