**Raymond LAVEY, Administrator**

v.

**Richard A. LAVEY et al.**

**87–153–Appeal.**

Supreme Court of Rhode Island.

Dec. 15, 1988.

estate, sued his brother Edward and Edward's wife, Julia, asking that the couple be designated as constructive trustees of $45,000 that should have been part of the aunt's estate. After hearing eight days of testimony, a Superior Court justice ruled that Edward had, in fact, defrauded his aunt of the $45,000 by telling her that the banks were about to fail and assuring her that he would preserve her funds by placing them in a safe-deposit box. The funds eventually ended up in either a safe-deposit box or bank accounts, both of which stood in the joint names of Edward and his wife. This court affirmed the trial justice's conclusions. At that time, Edward and his wife had been enjoined from transferring any of their real estate.

In late June 1975, but prior to the trial justice's finding in Raymond's favor, Edward and his wife conveyed their residence, which was located in the town of Warren at 18 Greene Street, to their son Richard. They also conveyed to their daughter Carol another real estate parcel that was situated in the city of East Providence.

In July 1975, Raymond responded to the real estate transfers by instituting a second suit in the Superior Court in which he sued Edward, Julia, Richard, and Carol. He asked that the real estate transfers be nullified because they violated the prior restraining order and constituted a fraud on creditors.

The sheriff's return in the 1975 suit indicates that service of process on Richard was effectuated on July 28, 1975, by the sheriff leaving copies of the summons and complaint at Richard's "usual place of abode," to wit, 18 Greene Street in Warren, Rhode Island. Richard never filed an answer to the suit, and on August 20, 1975, a default was entered against him. Later, in November 1975, a Superior Court justice entered a default judgment, declaring that Edward and Julia's conveyance to Richard was "null and void and of no effect."

Almost four and a half years later Richard, through his counsel, sought to vacate the 1975 default judgment and quash any outstanding executions pending against him. Counsel sought a dismissal of the

John F. Cuzzone, Jr., and Samuel A. Miller, Quinn, Cuzzone and Geremia, Providence, for plaintiff.

Lauren E. Jones and Michael T. Eskey of Jones & Aisenberg, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This dispute might be considered a sequel to *Lavey v. Lavey*, 119 R.I. 407, 379 A.2d 361 (1977), when in 1974 Raymond Lavey, as the administrator of his aunt's

1975 suit as it related to Richard because the Superior Court never acquired jurisdiction over him. In April of 1978 a Superior Court justice ruled that the November 1975 judgment was a final judgment and since more than a year had elapsed since its entry, the court was without jurisdiction to entertain Richard's motions. Richard appealed this determination. In mid-October 1979, this court sustained his appeal and pointed out that any challenge to a judgment that is based on the claim that a judgment is void for lack of jurisdiction is not governed by the one-year limitation found in the provisions of Rule 60(b) of the Superior Court Rules of Civil Procedure. In remanding the 1975 litigation to the Superior Court, we sustained Richard's appeal on his claim that the Superior Court lacked jurisdiction over him and remanded this controversy to the Superior Court "where a hearing will be held on Richard's claim of no service." *Lavey v. Lavey*, 122 R.I. 881, 882, 407 A.2d 501, 502 (1979).

Richard's claim of no service of process came on for a hearing before a Superior Court justice in mid-May 1986. Richard is now before this court claiming that the trial justice erred when he determined that service of process was validly made upon him pursuant to the provisions of Rule 4(d)(1) of the Superior Court Rules of Civil Procedure.[1] Raymond concedes that Richard was not personally served, but both litigants recognize that Rule 4(d)(1) provides for substitute service by leaving a copy of the summons and complaint at a defendant's "dwelling house" or "usual place of abode" with a person of suitable age and discretion then residing therein. *Plushner v. Mills*, 429 A.2d 444, 445 (R.I. 1981). It is not disputed that a copy of a summons and complaint for Richard was left at the 18 Greene Street address with a

person of suitable age and discretion residing therein, but what is disputed is whether the 18 Greene Street address was Richard's dwelling house or usual place of abode for the purposes of Rule 4(d)(1). The trial justice found that it was, and Richard now argues that this factual finding is completely lacking any evidentiary support. He claims that his "dwelling house" or "usual place of abode" was a trailer that was stored inside a commercial garage situated on Croade Street in Warren.

■ As we begin our consideration of the merits of Richard's appeal, we would emphasize that when a trial justice sits without a jury, as in this dispute, the factual findings of the trial justice are to be accorded great weight. *Security Bank and Trust Co. v. Beaufort*, 540 A.2d 13, 15 (R.I.1988). Such findings will not be disturbed on appeal unless it is demonstrated that the trial justice misconceived or overlooked material evidence or was otherwise clearly wrong. *Id.* Richard does not claim that the trial justice misconceived or overlooked any material evidence but only that the trial justice's conclusion, that 18 Greene Street was his dwelling house or usual place of abode, finds no support whatsoever in the evidence. We do not subscribe to this contention.

■ There is no hard-and-fast definition of the terms "dwelling house" or "usual place of abode," and what is or is not a party's dwelling house or usual place of abode is a question that may only be resolved by looking at the totality of facts in a particular dispute. *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir.1963). The trial justice, before making his determination, correctly observed that "there are many tests as to what constitutes one's dwelling house or one's usual place of

---

1. Rule 4(d)(1) of the Superior Court Rules of Procedure states:

    "*Summons: Personal Service.* The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:

    (1) Upon an individual other than an incompetent person by delivering a copy of the summons and complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process, provided that if the agent is one designated by statute to receive service, such further notice as the statute requires shall be given."

abode for the purpose of interpreting Rule 4(d)" and that the determination is not controlled solely by the location where Richard has spent his sleeping hours. If that were the sole test, any elusive defendant could nullify the substitute service provision of Rule 4(d)(1) and defeat the court's jurisdiction by temporarily sleeping in quarters away from his home. The trial justice also correctly observed that although this court has not settled on a precise definition of one's dwelling house or usual place of abode for the purposes of Rule 4(d)(1), this court has ruled that, when a defendant receives actual notice of the suit, Rule 4(d)(1) will be interpreted broadly. *Plushner v. Mills*, 429 A.2d at 446. We would further note that in today's highly mobile society it is possible that a defendant may maintain more than one dwelling place or usual place of abode for the purposes of Rule 4(d)(1). *Karlin v. Avis*, 326 F.Supp. 1325, 1329 (E.D.N.Y.1971).

■ Turning to the findings of fact made in this case, the trial justice first found that Richard received actual notice of the suit. There was adequate evidence to support this finding. Leslie Ann Kershaw (Leslie), another one of Richard's sisters, testified that Richard was at the 18 Greene Street house on July 28, 1975, when the sheriff left Richard's summons and complaint with Edward, Richard's father. Leslie testified that when the doorbell rang, Richard said, "It's the Deputy Sheriff," and then went into one of the bedrooms to avoid him. Leslie testified further that after the sheriff left, Richard came out of the bedroom and Edward said to him, "There's one here for you, Rick," after which Richard took the papers and walked out. Edward's deposition, which was read into evidence, corroborated his daughter's testimony. Edward also added that, before Richard went into the bedroom, he remarked, "Here comes the sheriff. Don't tell him I'm here." Finally, former counsel for Raymond testified that Richard was present at a mid-August 1975 inchambers conference with a Superior Court justice relative to the issuance of a restraining order. On this occasion the Superior Court justice advised Richard that he should retain an attorney. In light of this evidence, we accept the trial justice's finding that Richard had actual notice of the 1975 suit.

■ After making this initial finding, the trial justice properly interpreted Rule 4(d)(1) broadly, viewed the evidence in its entirety, and ruled that on July 28, 1975, 18 Greene Street was Richard's dwelling house and usual place of abode. This finding has adequate evidentiary support in the record. Leslie also testified that during July of 1975 she saw Richard at 18 Greene Street on a daily basis where he ate dinner, occasionally showered, and watched television. Edward, the father, testified by way of a deposition. He stated that during the relevant time frame, Richard was at the 18 Greene Street house "practically every day" and that he very seldom missed a day. Edward also testified that Richard would pick up his mail and at times sleep, shower, and dress at the 18 Greene Street address. Other documentary evidence indicated that Richard was the record titleholder of 18 Greene Street on the day of service and that during the period of time between 1971 and 1977, he used the Greene Street address on a number of documents including his driver's license application, his application for a marriage license, several loan applications, a housing rental application, bank records, and his voter registration.

Richard attempted to counter Raymond's evidence by introducing a great deal of evidence indicating that from February of 1975 through August of 1975, Richard spent a considerable amount of time in his trailer, which was situated in the Croade Street garage. Although this trailer was equipped with many of the amenities for comfortable living, Richard as well as others testified that this arrangement was a temporary one. The fact, therefore, that Richard spent a considerable amount of time, including his sleeping hours, in his trailer on Croade Street during the months of February 1975 through August 1975 does not nullify the trial justice's finding that 18 Greene Street was Richard's dwell-

ing house or usual place of abode within Rule 4(d)(1). We endorse this conclusion.

 The final facet of Richard's appeal concerns his claim that the trial justice's rejection of his contentions about where his dwelling house was located is the direct result of prejudice that was manifested by the trial justice's conduct at various stages of the trial. The record clearly indicates that at times during the trial, the trial justice became exasperated with the manner in which Richard's trial counsel was posing questions to the witnesses. The record also reveals that at one point the trial justice threatened to hold Richard's trial counsel in contempt because an associate of Richard's counsel entered the courtroom and, without first seeking permission of the court, crossed in front of the bench while the trial was underway. In addition, some of the trial justice's comments to Richard's counsel were somewhat acerbic.

However, in *State v. Nidever*, 120 R.I. 767, 769–70, 390 A.2d 368, 370 (1978), this court commented:

"A charge that the trial justice was so prejudiced as to impair the fairness and impartiality of the trial is serious. Therefore, the person alleging prejudice carries a substantial burden. * * * One asserting prejudice must establish that the actions of the trial justice were affected by facts and events which were not pertinent nor before the court."

It should be noted that at no time did Richard's counsel ever seek a mistrial or ask that the trial justice recuse himself. The claim of prejudice was heard only after the trial justice had rendered his bench decision. Here there is no evidence that would warrant any inference that the trial justice's conclusions were based on bias rather than on the evidence in the record. All the pertinent findings about the location of Richard's dwelling house or usual place of abode have ample support in the evidence adduced at trial.

The appeal of Richard A. Lavey is denied and dismissed, and the judgment appealed from is affirmed.