**D.T.P., INC.,**

v.

**RED BRIDGE PROPERTIES, INC.**

No. 88–63–Appeal.

Supreme Court of Rhode Island.

July 2, 1990.

William F. McMahon, McMahon & McMahon, Providence, Frank T. Laznovsky, New York City, for plaintiff.

Anthony F. Muri, Goldenberg & Muri, Providence, for defendant.

OPINION

FAY, Chief Justice.

This matter comes before the Supreme Court on appeal by the defendant, Red Bridge Properties, Inc. (Red Bridge), from a Superior Court judgment in favor of the

plaintiff, D.T.P., Inc. (D.T.P.), upon its claim for declaratory relief and upon counts 1 and 2 of the defendant's counterclaim. The defendant also appeals from an order denying its motion for a new trial and its motion to amend the findings and conclusions entered by the Superior Court. We affirm the Superior Court's judgment and findings of fact. The facts leading up to this appeal are fairly complex. We shall attempt to state them succinctly, but without forsaking clarity.

The discussion in this case centers on the interpretation of language contained in an option to purchase property extended by plaintiff in an agreement between the parties entered into on November 5, 1981. The option gave Promet Corporation (Promet was the name used by Red Bridge in 1981) the right to purchase a certain parcel of land on Allens Avenue in Providence for the sum of $250,000. The sum of $5,000 was put into escrow as a deposit, at this point, to be refunded to defendant if the option could not be exercised. Section 2 of the option contained the following clause:

"This option may be exercised by giving notice thereof to Sellers * * * within sixty (60) days after the Sellers have advised Purchaser by written notice sent to Purchaser certified mail return receipt requested at its then principal place of business, *that a pending court matter involving the Sellers and Gibbs Oil Company has been resolved in favor of the Sellers.*" (Emphasis added.)

The pending court matter referred to in this clause involved litigation started by Gibbs Oil Company (Gibbs Oil) in 1976 against George L. Potter (Potter, who is also the principal of D.T.P.). The claim was for $300,000, according to Potter's attorney in the Red Bridge matter, and an attachment in the amount of $850,000 accompanied the litigation. The attachment included the property on Allens Avenue, thereby preventing Promet from acquiring free and clear title to the land it wished to purchase. At the time the option agreement between Promet and Potter was executed, the Gibbs Oil litigation was pending

before this Supreme Court after an appeal had been taken by Potter. The trial court had upheld the motion of Gibbs Oil for a new trial following a jury verdict for the defendant. Potter was very confident that he would prevail in the Supreme Court. However, on January 31, 1984, this court decided the Gibbs Oil litigation and upheld the trial court's judgment ordering a new trial.[1] The case was remanded to the Superior Court where the case was finally settled by stipulation, and Potter agreed to pay Gibbs Oil $25,000. The judgment was entered on February 13, 1987.

After hearing that the case was settled, the attorney for Promet/ Red Bridge wrote a letter to Potter's attorney on February 11, 1987, informing him that his client wished to exercise his option to purchase the property now that the lawsuit with Gibbs Oil had been settled.

The plaintiff answered by instituting this action on February 19, 1987, seeking a declaratory judgment that the option was invalid and void. The complaint alleged that "[t]he Potters cannot, and have not, given notice of a favorable disposition to defendant * * * because the Gibbs action was resolved adversely to the Potters." The defendant filed an answer on March 11, 1987. The answer included a counterclaim adding George and his wife, Dorothy Potter, individually as defendants and seeking a declaratory judgment and mandatory injunctive relief directing the Potters and D.T.P. to convey the real estate to Red Bridge. The defendant also requested compensatory and punitive damages. An amended answer filed on July 15, 1987, included counterclaims for fraud and damages resulting from plaintiff's failure to pay certain real estate taxes.

Both parties moved for summary judgment. On November 24, 1987, a hearing took place in the Superior Court. The trial justice ordered that defendant's motion be granted. He found the Potters' argument that the settlement with Gibbs Oil was not in their favor to be without merit because they were "not forced to enter into the settlement." He also stated that if he fol-

**1.** *See Gibbs Oil Co. v. Potter,* 471 A.2d 207 (R.I. 1984).

lowed plaintiff's line of reasoning, the payment of even one dollar to Gibbs Oil would prevent Red Bridge from exercising its option.

The plaintiff appealed the decision, and this court held a prebriefing conference pursuant to Supreme Court Rule 16(h). After discussing the issues with counsel and examining the memoranda filed by the parties, we entered an order remanding the case to the Superior Court with a direction that the trial justice hold an evidentiary hearing on the assumption that the language of section 2 of the option agreement was ambiguous. The evidentiary hearing was to include the factual context within which the agreement was entered into between the parties, including the facts relating to the pending suit with Gibbs Oil. The trial justice was also directed to make findings of fact concerning the intention of the parties in issuing the language "has been resolved in favor of the Sellers." It was further requested that the trial justice make a determination of finality under Rule 54(b) of the Superior Court Rules of Civil Procedure if he or she could see fit. On remand the original trial justice referred this case to the civil trial calendar where it was heard on March 7 and 8, 1989, in front of a different trial justice. After hearing extensive testimony, the subsequent trial justice established the following findings of fact.

Both parties originally anticipated that the Gibbs Oil litigation would be resolved in the Supreme Court and would not have a life beyond its decision. Potter's attorney, however, did not have as much confidence in the favorable outcome of the Supreme Court appeal as his client did, and he drafted section 2 of the option agreement in an effort to protect Potter. Although the original draft of the option agreement was prepared by Potter's attorney, Red Bridge's attorney made many changes and additions to the language, but he left the words "resolved in favor of" unchanged. During the negotiation of the option agreement and at the time of its execution, there was no discussion among the parties, or by their attorneys, in regard to the meaning of the disputed language. As executed, the

option agreement was the product of the joint efforts of the attorneys for the optionor and the optionee. The trial justice concluded that in leaving the words "resolved in favor of" unchanged, the optionee's attorney adopted those words as his own.

Red Bridge argued that its understanding of the meaning of the language "resolved in favor of" was that the attachment on the property was to be discharged at the conclusion of the litigation so that Potter would be able to convey marketable title, regardless of the outcome of the case in the Supreme Court. The trial justice found that the parties understood the words "resolved in favor of" to mean that it was necessary for Potter to prevail in his Supreme Court appeal in order for the optionee to exercise the option. He further found that it was not within the contemplation of the parties in using the term "resolved in favor of" that its meaning included either a settlement of the Gibbs Oil suit or the freeing of the encumbrances upon the subject real estate. Potter only had a contractual duty to notify the optionee if the Gibbs Oil case was resolved in his favor. With the settlement of that case and the entry of judgment for Gibbs Oil, the case was not resolved in favor of Potter, and he had no obligation to notify the optionee of that disposition. According to the trial justice, "the Supreme Court opinion of January 31, 1984, rendered the option agreement of no effect."

On May 23, 1989, judgment was entered in favor of plaintiff regarding its claim for declaratory relief and on counts 1 and 2 of defendant's counterclaim. A Rule 54(b) certificate was also issued, it having been determined that there was no just reason for delay in entering an appealable partial judgment. On June 7, 1989, defendant filed a motion for a new trial and a motion to amend the trial justice's conclusions and findings. After a hearing, this motion was denied on July 7, 1989, by the trial justice. The case was certified back to the Supreme Court on June 19, 1989.

The defendant also filed a notice of appeal on July 25, 1989, with this court. After the parties were directed to file pre-

briefing statements, the case was assigned to the regular calendar for full briefing and argument.

On appeal Red Bridge submits that the Superior Court's second ruling in favor of plaintiff regarding the meaning of the option was incorrect. Instead, defendant argues, the original Superior Court ruling in favor of Red Bridge on summary judgment should be affirmed. In addition defendant claims that the Superior Court erred in refusing to admit into evidence a lease entered into on August 20, 1986, between plaintiff and defendant. The defendant also argues that the Superior Court erred in denying its motion for a new trial and its motion to amend the trial justice's conclusions and findings.

At oral argument on May 10, 1990, we inquired whether defendant's notice of appeal had been filed in a timely manner and permitted both parties to file postargument memoranda regarding this issue. We were concerned with the doctrine enunciated in *Colvin v. Goldenberg*, 108 R.I. 198, 273 A.2d 663 (1971), and *Izzo v. Prudential Insurance Co.*, 114 R.I. 224, 331 A.2d 395 (1975). In *Colvin* we held "that in a nonjury civil action where the trial judge decides both the law and the facts, he may grant a new trial [under Super. R. Civ. P. 59(a)] only if he finds a manifest error of law in the judgment previously entered or if he is satisfied that the newly discovered evidence was not available at the first trial and is of sufficient importance to warrant a new trial." *Colvin*, 108 R.I. at 208, 273 A.2d at 669. In *Izzo* we held "that the time within which an appeal can be taken may not be extended by a motion for a new trial which is not authorized under Rule 59(a)." *Izzo*, 114 R.I. at 231, 331 A.2d at 399. If defendant Red Bridge's motion for a new trial was a nullity, the appeal to this court on July 25, 1989, after an entry of judgment on May 23, 1989, would have been untimely. We need not reach this issue at this time because this matter is properly before us on appeal pursuant to the express terms of the remand order we issued on April 20, 1988:

"5. After said evidentiary hearing, the trial justice will make findings of fact

* * *. *After making the findings of fact the trial justice will return the papers in this case to this court for determination of all issues relating to the appeal.*

"6. Further, the trial justice after making said findings of fact will execute if he sees fit a 54(b) certificate indicating that the remaining issues constitute no reason for delay *in returning the case to this court for determination of this appeal.*" (Emphasis added.)

The docket accordingly reflects that before Red Bridge's appeal was filed, the case was certified back to the Supreme Court by the trial justice on June 19, 1989.

Turning to the issues on appeal, we note that at this point in these proceedings we are not only reviewing the first trial justice's summary judgment order but also reviewing the second trial justice's findings of fact and judgment to determine whether he was correct. The second trial justice was asked to conduct an evidentiary hearing so he could construe the contended clause in the option contract in the context of the circumstances surrounding the transaction, according to established contract law, to determine its meaning. *See Hill v. M.S. Alper & Son, Inc.*, 106 R.I. 38, 47, 256 A.2d 10, 15 (1969). After having carefully reviewed the record of the evidentiary hearing and the findings of fact, we hold that the first trial justice's order granting defendant summary judgment was incorrect. We vacate that judgment and sustain the findings of fact and judgment of the second trial justice.

When reviewing a summary judgment order, we examine the pleadings and the affidavits in the light most favorable to the nonmoving party, and if no issue of material fact exists, we shall enter judgment in favor of the moving party as a matter of law. *Pacia v. Forte Bros., Inc.*, 565 A.2d 529, 530 (R.I.1989) (and cases cited therein). In the instant case summary judgment was an inappropriate means for disposing of the case because a genuine issue of material fact existed regarding the intent of the parties in drafting the clause

in the option contract concerning the pending Gibbs Oil litigation. At the time summary judgment was entered, insufficient evidence existed on the record for the trial justice to determine the correct construction of the disputed language in the option contract as a matter of law.

■ We have emphasized before that "[t]he purpose of summary judgment procedure is issue finding and not issue determination." *Westinghouse Broadcasting Co. v. Dial Media, Inc.*, 122 R.I. 571, 582, 410 A.2d 986, 992 (1980); *O'Connor v. McKanna*, 116 R.I. 627, 635, 359 A.2d 350, 354 (1976). In *O'Connor* we held that summary judgment may not be proper when the case involves an ambiguous contract because the ambiguity creates a question of fact. *O'Connor*, 116 R.I. at 634, 359 A.2d at 353. "A contract is ambiguous if, in light of our rules of contract interpretation, it is reasonably susceptible of different constructions." *Westinghouse Broadcasting Co.*, 122 R.I. at 579, 410 A.2d at 991. In this case it was clear that both parties advocated different constructions of the clause "resolved in favor of."

When the trial justice directed summary judgment in favor of Red Bridge in February 1988, he did not state whether his conclusion was founded on his interpretation that the option language itself was plain and unambiguous or whether it was founded on evidence surrounding the execution of the option. We ordered a remand for an evidentiary hearing on the assumption that the language in section 2 of the option was ambiguous.

The defendant contends in his brief that both parties had submitted on summary judgment that the clause in the option was not ambiguous. It was within our power, though, to assume that the clause was to be interpreted as ambiguous, considering all the evidence properly before the trial justice, even though the trial justice did not actually decide on summary judgment that the language was ambiguous. *See Westinghouse Broadcasting Co.*, 122 R.I. at 579, 410 A.2d at 990–91.

In reviewing the second trial justice's findings of fact after the case was remanded to Superior Court, we have as our task merely to determine whether his findings are supported by the evidence or whether in making his findings he misconceived or overlooked any material evidence. *Security Bank and Trust Co. v. Beaufort*, 540 A.2d 13, 15 (R.I.1988); *Abbey Medical/Abbey Rents, Inc. v. Mignacca*, 471 A.2d 189, 192–93 (R.I.1984); *Duffy v. Mollo*, 121 R.I. 480, 484–85, 400 A.2d 263, 266 (1979). "This court accords great weight to findings of fact of a trial justice sitting without a jury." *Security Bank and Trust Co.*, 540 A.2d at 15.

■ After reviewing the record, we are of the opinion that the trial justice did not misconceive the evidence when he found that

"11. The parties understood the words 'resolved in favor of' to mean that it was necessary for Mr. Potter to prevail in his Supreme Court appeal in order for the optionee to exercise the option. It was the intention of the parties that the option could be exercised only if the Supreme Court entered judgment for the defendant Potter.

"12. It was not within the contemplation of the parties in using the term 'resolved in favor of' that its meaning included either a settlement of the Gibbs Oil suit or the freeing of the encumbrances upon the subject real estate."

He applied the correct rules of contract interpretation when he construed the evidence presented to him to determine the meaning of the language "resolved in favor of." His primary task was to ascertain the intent of the parties. *Woonsocket Teachers' Guild, Local 951 v. School Committee of Woonsocket*, 117 R.I. 373, 376, 367 A.2d 203, 205 (1976). According to our established rules of contract interpretation, it must be determined if the intention of the parties can be clearly inferred from its terms. *Id.; see also Hill*, 106 R.I. at 47, 256 A.2d at 15. "And, in interpreting the language of the contract, the words used are to be assigned their ordinary meaning." *Woonsocket Teachers' Guild, Local 951*, 117 R.I. at 376, 367 A.2d at 205; *see also*

**1382**

Restatement (Second) *Contracts* § 202(3)(a) (1981).

The trial justice, in his bench decision rendered on March 14, 1989, focused on the plain meaning of the words "resolved in favor of":

"The argument was made * * * at the conclusion of the evidence, that lawyers know what the term 'in favor of' means and I agree with that. It's a common term. We have a sense about it. We know that it doesn't mean settlement.

" * * *

"When we get into the area of saying whether a settlement was in favor of one person or another, we are involving ourselves with so many intangibles that it might be difficult to make conclusions in most cases.

" * * *

"I mention the fact that lawyers speak in terms of 'I got a judgment in favor of myself—my client' or 'The judgment was in favor of the defendant.' It's not only legal talk, *Webster's Third New International Dictionary* defines the term. The first definition they give of the term 'in favor of' is a general one meaning, 'to the special advantage or benefit of' and then they go down to one (b), in which they talk about in favor of meaning 'For the acquittal of (the jury returned in favor of the man accused of robbery)' then on the civil side they define it as 'In support of (the Court's decision was in favor of the corporation that brought the suit).' So when lawyers talk about knowing what in favor of means, they're not talking strictly legal talk. It's a phrase that has a common acceptation."

 Furthermore, "[i]f the terms of a contract are ambiguous, the court will look to the construction placed upon such terms by the parties themselves as an aid in determining their intended meaning. * * * The circumstances surrounding the execution of the contract are also relevant to the determination of that intent." *Woonsocket*

*Teachers' Guild, Local 951*, 117 R.I. at 376, 367 A.2d at 205; *see also Hill*, 106 R.I. at 47, 256 A.2d at 15; Restatement (Second) *Contracts* § 202(1). The trial justice followed these rules in his interpretation of the clause in the option contract as well. He found that the parties intended the option to be governed by the result of the Supreme Court decision in the Gibbs Oil litigation. He made this finding because at the hearing the principal of Red Bridge corroborated Potter's and his lawyer's testimony that it was anticipated that the matter would be resolved in the Supreme Court. He stated that the "most objective evidence in this case that Promet too viewed the Supreme Court decision as making the option exercisable" was in paragraph 4(a) of a letter sent to Potter's attorney by Promet/Red Bridge on November 2, 1981:

"The amount to be placed in escrow would be $5,000 not $20,000. I believe that the $20,000 figure was originally suggested when negotiations were being held earlier this year and it was anticipated that a closing could be held in two or three months since the litigation was drawing to a close. Now, however, that the matter is before the Supreme Court and the case may take more than a year to conclude, my clients are not inclined to have $20,000 tied up for such a lengthy period of time."

The inference to be drawn from this letter is that when the Supreme Court had decided the case, Promet/Red Bridge would know whether it had "a deal."

The trial justice went on to say that the conduct of Promet/Red Bridge also caused the court to come to the conclusion that the option was to be governed by the results of the Supreme Court decision. The Supreme Court decided the Gibbs Oil case in January 1984. The evidence reflects, however, that there was a total lack of communication between the parties until February 11, 1987, regarding the exercising of the option.[2] The trial justice decided that there

---

**2.** The trial justice also pointed to a docket entry on March 27, 1986, that reflected a stipulation to enter the case as settled. He noted that a period of forty-four weeks had gone by before February 11, 1987, without any discussion of the status of the option. He cited this evidence to illustrate the fact that the parties knew that the option was no longer exercisable. Although the

was no other conclusion to draw than that all the parties knew the significance of the Supreme Court decision and "that the option was gone." We agree with the trial justice and see no reason to hold that he misconceived the evidence or was otherwise clearly wrong.

The defendant's next argument on appeal concerns the second trial justice's ruling refusing to admit into evidence a lease entered into on August 20, 1986, between plaintiff and defendant for the same parcel of land that is the subject of the option.

In 1976 the Potters had entered into a lease with Laro Coal and Iron Company (Laro) for the parcel of land in question. In 1979 defendant became involved with this property when it subleased the property from Laro.[3] The Potters had full knowledge of the sublease. The Potters' original lease with Laro expired in August 1986 with an option to renew the lease for ten years. In 1986 the sublessee, Promet/Red Bridge, sought to renew the original lease with the Potters. On August 25, 1986, Potter and Red Bridge executed a ten-year lease for the property. Paragraph 18 of the lease stated specifically that Red Bridge's option to purchase the property remained in effect.

The trial justice excluded the 1986 lease from evidence because it opened up an area that was not contemplated by the remand. The 1986 lease did not aid in the interpretation of the contested option language because, according to the trial justice,

"We're concentrating here on what was intended up to, well all the negotiations that preceded the execution of Exhibit 4 [the option] on November fifth of 1981. You're talking about something that occurred five years later and I don't want to go on to another expedition to determine whether what was said in 1986 was inconsistent with what the witnesses are saying or just a change of mind. I look upon it perhaps as a resurrection. I

don't agree that it is inescapably inconsistent. It could be. But on the other hand, it might be just an idea that they want to continue this option even though he might have contemplated differently prior to November 5th of 1981."

"Our standard of review of rulings on the admission or exclusion of evidence on relevancy grounds is whether a trial justice abused his discretion." *State v. Lamoureaux*, 558 A.2d 951, 954 (R.I.1989). "We have defined relevant evidence as evidence that tends to prove or disprove a point provable in the case." *Abbey Medical/Abbey Rents, Inc.*, 471 A.2d at 194.

We are of the opinion that the trial justice did not abuse his discretion in excluding the 1986 lease from evidence. This case was remanded to Superior Court to determine the circumstances surrounding the execution of the option. The 1986 lease does not prove what the intent of the parties was when they entered into the option in 1981. We agree with the trial justice that the 1986 lease does not necessarily shed light on the meaning of the language "resolved in favor of." The 1986 lease may say that the option continues, but it does not attempt to illustrate what the 1981 option means. The trial justice was correct in excluding the 1986 lease and the testimony regarding this lease from evidence.

Since we rule that the second trial justice's findings of fact were supported by the evidence and the 1986 lease was properly excluded, his denial of defendant's motion for a new trial and its motion to amend the conclusions and finding was correct.

Finally, we would like to point out that in vacating the first trial justice's summary judgment order, we also vacate his ruling regarding the rule against perpetuities. He had decided that the option did not violate the rule against perpetuities because the interest of Red Bridge vested within twenty-one years. Since we rule

docket also reflects that the case was not officially settled until February 13, 1987, when judgment was entered, the fact remains that Red Bridge never discussed its rights regarding the option with Potter before February 1987.

3. Consequently when Promet entered into the option to purchase the property in November 1981 with the Potters, Promet was already in possession of the lot as a sublessee.

that the option was not exercisable owing to the outcome of the Gibbs Oil case in 1984, the issue regarding the rule against perpetuities becomes moot. In addition the parties did not address the issue at oral argument, although the defendant does discuss the issue in its brief.

For the reasons referred to above, we vacate the first trial justice's summary judgment order and affirm the second trial justice's findings of fact and judgment in favor of the plaintiff upon its claim for declaratory relief and upon counts 1 and 2 of the defendant's counterclaim. A partial judgment will enter in favor of the plaintiff, and the papers in this case shall be remanded to the Superior Court for the determination of counts 3, 4, and 5 of the defendant's counterclaim involving issues of fraud and damages resulting from the plaintiff's failure to pay taxes.