THE ELENA CARCIERI
TRUST–1988 et al.

v.

ENTERPRISE RENT–A–CAR
COMPANY OF RHODE
ISLAND.

No. 2004–176–Appeal.

Supreme Court of Rhode Island.

May 3, 2005.

---

Armando E. Batastini, III, Esq., Providence, for Petitioner.

Jeffrey C. Schrock, Esq., for Respondent.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on March 7, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.

After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and proceed to decide the appeal at this time.

The parties to this appeal contest whether the plaintiff, Elena Carcieri Trust—1988 and Elena Pisaturo, as successor trustee (collectively landlord or plaintiff), properly terminated a lease with the defendant, Enterprise Rent–A–Car Company of Rhode Island (tenant or defendant). The resolution of this issue hinges on whether the defendant timely exercised its option to extend the lease in accordance with its provisions, which required that notice of tenant's election to extend the term of the lease be given "not later than three (3) months prior to the expiration of the original term."

The parties agree about the facts.[1] On October 28, 1997, plaintiff entered into a lease agreement (lease) with defendant for property at 1871 Mineral Spring Avenue in North Providence (property or demised property). Although the lease required the parties to enter into a separate agreement stipulating "the actual [c]ommencement [d]ate and the termination date of the original and each extended term," the parties never did so. In the middle of March 1998, defendant began to operate its business on the premises, paid a partial month's rent for March, and prepaid one month's rent. The defendant began paying rent in March 1998, but the annual rent increase set forth in the lease for the second lease-year and fourth lease-year commenced on November 1, 1998, and November 1, 2000, respectively.

On August 1, 2002, acting under the belief that defendant had not exercised its option to extend the lease, plaintiff sent a notice of lease cancellation to defendant. In response, defendant notified plaintiff that, because the lease did not commence on November 1, 1997, it could still exercise its option to extend the lease and purported to do so on August 22, 2002. On April 30, 2003, plaintiff served defendant with a notice of termination of tenancy, but defendant remained in possession of the property following the termination date set forth in that notice. The defendant paid and plaintiff accepted increased rent for this holdover period.

On June 2, 2003, plaintiff filed a complaint in District Court seeking to evict defendant from the property pursuant to G.L.1956 chapter 18.1 of title 34. The plaintiff alleged that defendant unlawfully held over after the termination of the tenancy. The parties proceeded to trial, and on December 1, 2003, the District Court rendered judgment in favor of defendant. The plaintiff appealed to the Superior Court.

A jury-waived, *de novo* trial was held in Superior Court.[2] The trial justice declared the lease terms to be ambiguous and proceeded to find that the parties intended that the lease term extend from

---

**1.** On November 12, 2003, the parties submitted a document entitled "Joint Statement of Undisputed Facts," which was signed by counsel for both defendant and plaintiff, to the District Court. The parties' "Joint Statement of Undisputed Facts" included a "true and accurate" copy of the lease attached as an exhibit.

**2.** "In an ejectment action pursuant to G.L. 1956 [chapter 18.1 of title 34] for possession of the premises and nonpayment of rent under the terms of a commercial lease, the parties have a statutory right to appeal the judgment of the District Court and are entitled to a *de novo* hearing by the Superior Court." *Downtown Group, LLC v. Tine,* 769 A.2d 621, 622 (R.I.2001) (mem.) (citing G.L.1956 § 9–12–10 and *Putnam Furniture Leasing Co. v. Borden,* 539 A.2d 73 (R.I.1987)). (Emphasis added.)

November 1, 1997, through October 31, 2002. The trial justice determined that defendant's August 22, 2002, notice to exercise its option to extend the lease was ineffective because it was not made by the deadline set by the agreement, July 31, 2002. The Superior Court concluded that, by failing to timely exercise the renewal option, defendant became a holdover tenant. Finally, the trial justice found that, by accepting increased rent payments in 2003, plaintiff did not waive the right to evict defendant. The Superior Court entered judgment in favor of plaintiff. The defendant appealed to this Court.

■ When construing contract terms, the court's main objective is to ascertain the parties' intent. *D.T.P., Inc. v. Red Bridge Properties, Inc.*, 576 A.2d 1377, 1381 (R.I.1990). If the intention of the parties can be clearly discerned from the language of a written contract, the words of the contract are assigned their plain and ordinary meaning. *Id.*

■ However, if an ambiguity exists, the court may consider the construction placed upon the contract terms by the parties. *Johnson v. Western National Life Insurance Co.*, 641 A.2d 47, 48 (R.I. 1994). " 'In determining whether a contract is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning.' " *Samos v. 43 East Realty Corp.*, 811 A.2d 642, 643 (R.I.2002). " '[A] contract is ambiguous only when it is reasonably and clearly susceptible of more than one interpretation.' " *Id.*

■ The interpretation of an unambiguous contract is a question of law, but the interpretation of an ambiguous contract is a question of fact. *Clark–Fitzpatrick, Inc./Franki Foundation Co. v. Gill*, 652 A.2d 440, 443 (R.I.1994). This Court accords great deference to the findings of a trial justice sitting without a jury, and "we do not disturb the findings of the trial justice unless he or she overlooked or misconceived material evidence or was otherwise clearly wrong." *Id.*

■ On appeal, defendant contends that the lease expired on February 28, 2003. Although the lease specified the commencement and termination dates as November 1, 1997, and October 31, 2002, defendant argues that the parties agreed that the lease would have a different actual commencement date that "depended upon the completion of the landlord's work, the start-up date of the business, and the period during which there was abatement of rent."

We turn to the relevant provisions of the lease. Article 3, section 3.1(a) offered the tenant the option to extend the "original term" of the lease for two successive, additional periods of five years, if tenant "give[s][l]andlord written notice of such election to extend the term hereof * * * in the event of the extension of the original term, not later than three (3) months prior to the expiration of the original term * * *." The parties to this appeal dispute the date marking the "expiration of the original term."

Article 2, section 2.1, entitled "Term of Lease," unequivocally provides that the lease commences on November 1, 1997, and ends on October 31, 2002. Section 2.1 provides, in pertinent part:

"The term of this [l]ease shall be for [*sic*] commencing on *Nov. 1st, 1997* and ending on *October 31, 2002.* For purposes of this [l]ease, a[l]ease [y]ear shall be the 12–month period commencing on the first day of the first full calendar month of the [t]erm and ending on the last day of the twelfth full calendar month thereafter." (Emphases indicate handwritten provisions.)

Section 2.2 of the lease, entitled "Commencement Date," provides, in pertinent part:

"The '[c]ommencement [d]ate' shall mean the earlier of (i) the date on which [t]enant shall commence to conduct business with the public on the [d]emised [p]remises or (ii) ninety (90) days after [l]andlord delivers the [d]emised [p]remises with [l]andlord's work * * *. Tenant shall have the grace of ninety (90) days following the execution of the [l]ease as a rent free period and rent shall commence on the 91st day conditioned upon [l]andlord having completed her work * * *."

Although section 2.2 sets forth a formula to calculate when "rent shall commence," this section does not address the term of the lease or its termination date, which is clearly and specifically set forth in section 2.1. We conclude that section 2.2 provides the parties with a formula to determine the due date of defendant's first rental payment but has no bearing on the "expiration of the original term."

The lease also provided for the creation of a separate agreement, by which the parties would agree on the actual commencement date and the termination date. Article 20, section 20.14 provides that "[a]s soon as practicable following the [c]ommencement [d]ate, the parties shall enter into an agreement stipulating the following: the actual [c]ommencement [d]ate and the termination date of the original and each extended term, if exercised, of the [l]ease." This section contemplates that the parties would enter into a second agreement stipulating the termination of the original term, but the parties never entered into that agreement. In the absence of an agreement modifying the term of the lease, the parties are bound by the terms in the original lease: November 1, 1997, to October 31, 2002. We discern no error in the trial justice's refusal to impose a lease term based upon speculation about what dates the parties would have selected if they had complied with section 20.14 and entered into a supplemental agreement.

Furthermore, this section, requiring a separate agreement, substantiates an understanding between the parties that section 2.2 did not establish a formula to determine the lease's term; otherwise, an agreement stipulating the actual commencement date and termination date of the original term would be unnecessary.

This dispute required the Superior Court, without the benefit of the supplemental agreement described in section 20.14, to reconcile inconsistencies between three lease terms—section 2.1, "Term of Lease;" section 2.2, "Commencement Date;" and section 20.14, "Supplemental Agreements"—to determine the proper time frame for defendant to have exercised its option to extend. The trial justice found that the lease's commencement date was November 1, 1997, and that its termination date was October 31, 2002, and therefore, the deadline for defendant to exercise its option to extend ("not later than three (3) months prior to the expiration of the original term") was July 31, 2002. In making this finding, the trial justice accorded greater weight to the handwritten dates in the contract over inconsistent typewritten terms. Also, the trial justice noted that the lease required a rent increase beginning on the second and fourth years of the lease, and that defendant tendered increased rent payments based upon a lease term beginning on November 1, 1997.[3]

The defendant argues that section 20.12, entitled "Tolling of Lease Term," was evi-

---

**3.** The defendant increased its rental payments on November 1, 1998, and November 1, 2000.

dence of the parties' intent that the lease required five full years of lease payments and that the expiration date was the end of this five-year period. Section 20.12 provides, in pertinent part:

"In the event the [a]nnual [r]ent shall completely abate pursuant to the terms of this [l]ease, * * * in which event the monthly installments of [a]nnual [r]ent, following the end of the period of such abatement, shall *recommence* * * * and the expiration date of this [l]ease and the extended term(s) shall be extended for the period of such abatement." (Emphasis added.)

Although Article 4, section 4.1 of the lease provided that the first three months of rent was abated, the trial justice resolved the inconsistency between sections 4.1 and 20.12 by finding that "[b]y use of the word recommence [in section 20.12], the parties meant to limit § 20.12 to those situations where there was an interruption in the [tenancy], perhaps caused by a casualty loss, and not the free rent abatement referred to in § 4.1." The trial justice's interpretation of the tolling provision was consistent with the language of the agreement.

After reviewing the lease in its entirety, according the language employed its plain, ordinary, and usual meaning, we are satisfied that the trial justice did not err in finding that the contract was ambiguous. Applying a deferential standard of review to the findings of fact, we affirm the finding that the lease term extended from November 1, 1997, to October 31, 2002, and that defendant, by tendering its notice to extend after the July 31, 2002, deadline, failed to exercise its option to extend the lease period in a timely manner.

 Having failed to properly exercise an option to extend the lease and occupying the premises past the term of the lease, the defendant became a holdover tenant. *See Dyer v. Ryder Student Transportation Services, Inc.,* 765 A.2d 858, 860 (R.I.2001) (holding that, by failing to strictly comply with notice provisions of lease to properly exercise an option to renew, the tenant became a holdover tenant when the lease terminated). The trial justice correctly held that the plaintiff was entitled to possession of the premises.

For the foregoing reasons, we affirm the judgment of the Superior Court. The papers of the case are remanded to the Superior Court.

Justice Robinson did not participate.