Robert W. GIBBONS

v.

Lucinda M. GIBBONS.

No. 91–266–Appeal.

Supreme Court of Rhode Island.

Jan. 27, 1993.

Stephen J. Fortunato, Fortunato & Tarro, Allen Kirshenbaum, Carolyn Barone, Kirshenbaum Law Associates, Kris Macaruso Marotti, Fortunato & Tarro, Warwick, for plaintiff.

Howard Lipsey, Lipsey & Skolnik, Providence, for defendant.

## OPINION

### PER CURIAM.

This case comes before us on the appeal of Robert W. Gibbons (husband) from orders of equitable property distribution, counsel fees, and child support awarded to Lucinda M. Gibbons (wife) incident to a judgment entered in the Family Court awarding a divorce to the husband on the grounds of irreconcilable differences. Neither party appeals from the judgment of divorce. The husband and the wife were married on July 28, 1973. As of the time of the entry of the decision pending final judgment of divorce, the parties had been married for seventeen and a half years. The husband is a podiatrist with an annual business income of approximately $280,000 per year. The general master who presided at the trial of this case awarded to the wife 70 percent of the marital assets, which the master found to be in the amount of $1,214,294.48. The actual total of marital assets from our calculations should have been $1,180,940.23. The master awarded the remainder of the assets to the husband. In calculating the cash amount to be paid to the wife from the value of the podiatric practice, the sum of $442,777 was ordered to be paid on or before January 1, 1991, or at the option of the husband over a period of five years with interest at the rate of 12 percent per annum, each installment payable on January 1 of each year beginning in 1991 in no less an amount than $88,555 per year plus 12 percent interest. These awards were made in lieu of alimony. Our calculation of the cash award indicates that this sum should have been $432,776.29 (de-

ducting $417,223.71 in assets from the total award of $850,000).

We shall consider the points raised by the husband in the order in which they are set forth in his brief. We affirm the orders in part and modify them in part.

## I

### THE AWARD OF 70 PERCENT OF THE MARITAL ESTATE

We are of the opinion that the general master did not err in awarding the wife 70 percent of the marital estate since we cannot say that he was clearly wrong in applying the criteria for equitable distribution pursuant to G.L.1956 (1988 Reenactment) § 15–5–16.1, which sets forth the factors to be considered in distributing marital assets, namely, (1) the length of the marriage, (2) the conduct of the parties during the marriage, (3) the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates, and (4) the contribution and services of either party as homemaker. In the instant case the parties had been married for seventeen and a half years. The wife had been an exemplary homemaker, caring for the five children of the parties, and had contributed to her husband's education. She had been employed whenever possible after the birth of the first child and had assisted the husband as a nurse when he opened an office in the town of North Providence. The master attributed no fault to the wife for the break up of the marriage but found that the husband was fully responsible for the termination of the marriage by carrying on an extra-marital affair with one of his employees while his wife was pregnant with the fifth child. The general master, in considering all the factors set forth in the statute, acted well within his discretion in making the award. *See Marocco v. Marocco,* 571 A.2d 572 (R.I. 1990); *Stanzler v. Stanzler,* 560 A.2d 342 (R.I.1989).

## II

### THE VALUATION OF THE PODIATRIC PRACTICE

After considering the testimony of the expert witnesses, the general master ar-

rived at a value of the podiatric practice in the sum of $504,000. This valuation was made on the basis of the testimony of an expert witness, Alan Gilstein, C.P.A., who capitalized future earnings from the practice and concluded pursuant to Internal Revenue Service ruling 59–60 that the total value of the practice was $840,000. He reduced this figure by 20 percent for lack of marketability to the sum of $672,000 as the fair market value of the practice. The general master in his finding adopted a 40–percent factor for lack of marketability that had been determined by one of the husband's experts, Eugene Amelio, esquire. The master rejected the testimony of another expert presented by the husband, Anthony Melia, C.P.A. Using the 40–percent discount for lack of marketability, the general master arrived at the figure of $504,000.

The court is divided on the propriety of this award. Two justices are of the opinion that it is improper as a matter of law to capitalize the earnings of a professional practice on the basis of the services of a single individual in order to arrive at a good-will factor in ascertaining the value of such practice. *See, e.g., Powell v. Powell,* 231 Kan. 456, 648 P.2d 218 (1982); *Hanson v. Hanson,* 738 S.W.2d 429 (Mo.1987); *Nail v. Nail,* 486 S.W.2d 761 (Tex.1972); *Sorensen v. Sorensen,* 839 P.2d 774 (Utah 1992); *Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343 (1981).

■ Two justices are of the opinion that this issue has not been preserved on appeal by reason of the fact that the husband's experts also purported to value the good will of this practice, utilizing the factor of capitalizing a portion of future excess earnings. Consequently, since the court is equally divided on this issue, the findings of the general master concerning this valuation are affirmed.

## III

## ATTORNEYS' FEES

■ The general master awarded to the wife the sum of $82,602 in counsel fees. The husband challenges this award on two grounds. He argues first that the wife has ample funds with which to pay her own counsel fees, particularly in light of the award to be paid in cash on the basis of the valuation of the podiatric practice. Second, the husband argues that the award was excessive. The wife argues that her lack of earnings, both at present and in the foreseeable future, make her less able to pay counsel fees than the husband. The wife further argues that this court should further consider the fact that she has not been awarded a sum for alimony.

Taking both of these positions into account, we believe that this case tends to be sui generis. There is no question that the wife has been awarded substantial assets. There is further no question that the husband's earning power far exceeds that of the wife and is likely to do so on a permanent basis. The wife's ability to seek employment was found by the master to be severely limited in light of her role as caretaker of five children, one of whom has special needs. In the special circumstances of this case, we believe that some award of counsel fee was within the discretion of the general master. However, we are of the opinion that this award should not exceed $35,000. In arriving at this amount, we take into account that the actual services based upon expenditure of time was in the sum of less than $22,000. The balance of the attorney's fee awarded constituted an additional amount that the master derived from factors included in Rule 1.5 of Rule 47 of the Supreme Court Rules of Professional Conduct. Taking these factors into account is a matter of strong dispute between the parties. We find it unnecessary to resolve this dispute in this case. In light of the assets available to the wife as well as the earning capacity of the husband, we believe that the wife is able to bear the cost of a significant amount of her own counsel fees. Therefore, we reduce the amount of the award of counsel fee to the sum of $35,000, which sum shall include costs for expert witnesses and other costs.

## IV

## THE INSTALLMENT PAYMENT

■ Although the court is equally divided on the issue of the valuation of the

podiatric practice, we believe that the installment option made available to the husband is appropriate. However, in light of present-day interest rates, we are of the opinion that the addition of 12 percent interest is excessive. This is not an action in tort but a marital distribution of property. Therefore, the interest applicable to the optional installment payments is reduced to six percent per annum.

## V

## VALUATION OF CRANBERRY TERRACE PROPERTY

■ The Cranberry Terrace property is a piece of residential realty purchased by the husband in Alpine Estates in the city of Cranston. It is agreed that the property was purchased for $390,000 and that at the time of the trial of this case was subject to a mortgage of $307,400. The husband presented an expert, James Sloane, who testified that the current market value of the property was $292,000. The general master's finding in regard to the equity value was based upon the original purchase price together with the cost of improvements made to the property as of the time of purchase.

The general master rejected James Sloane's testimony as unpersuasive. We believe that in this instance the master was not clearly wrong in utilizing a cost basis for his valuation of the property, although normally comparable sales do provide the most persuasive evidence of value. However, on cross-examination, testimony was adduced from the expert that he did not take into account in adjusting his comparable sales the postpurchase additional improvements to the Cranberry Terrace property. In this analysis the master was not clearly wrong.

## VI

## CHILD SUPPORT

■ The general master awarded the sum of $1,000 per month per child for the support of the minor children of the parties. In so doing, he took into account the factors set forth in § 15–5–16.2. He considered the standard of living that the children would have enjoyed had the marriage not been dissolved, the circumstances of the children and their educational needs, and the financial resources and needs of the noncustodial parent. The award of child support is within the sound discretion of the trial justice (here the general master). *Sullivan v. Sullivan*, 460 A.2d 1248, 1249 (R.I.1983).

Considering the circumstances of the husband and the wife, as well as the standard of living of the husband and his probable future income, we believe that the general master did not abuse his discretion in the award of support for the minor children.

## VII

## THE WIFE'S HEALTH-CARE COVERAGE

The general master required the husband to pay for the wife's health-care coverage in accordance with the Rhode Island Insurance Continuation Act or during the five-year period in which the husband is paying the sums due pursuant to marital distribution, whichever occurs later.

General Laws 1956 (1989 Reenactment) § 27–20.4–1 allows the wife to be eligible for continuing benefits under her husband's health plan until (1) the remarriage of either party to the divorce or (2) such time as provided by the judgment of divorce.

We are of the opinion that this portion of the order requires clarification. We cannot determine whether this health-care coverage would terminate forthwith upon the payment of the lump sum provided in the marital distribution award or upon the remarriage of either party. We therefore remand this question to the general master for clarification.

We have considered other points raised by the husband in support of his appeal and find that they are without merit.

For the reasons stated, the orders issued by the master are affirmed in part and modified in part. The papers in the case

are remanded to the general master with directions to modify his orders in accordance with this opinion.