Daniel J. BECKER

v.

Kleo K. PERKINS–BECKER.

No. 92–471–Appeal.

Supreme Court of Rhode Island.

Jan. 12, 1996.

William G. Savastano, North Smithfield, for Plaintiff.

Eleanor W. Brown, Providence, for Defendant.

## OPINION

MURRAY, Justice.

This case comes before us on the appeal of Daniel J. Becker (the husband) and on the cross-appeal of Kleo K. Perkins Becker (the wife) from a decision and certain orders incident to a final judgment of the Family Court granting the husband's petition and the wife's counterclaim for an absolute divorce on the basis of irreconcilable differences that had caused the irremediable breakdown of the marriage. Neither party appeals from the judgment of divorce. We sustain the husband's appeal in part and deny and dismiss it in part. We deny and dismiss the

wife's cross-appeal. A partial summary of facts as found by the trial justice follows.

The parties were married on September 7, 1985, and separated in January 1990. They began having problems shortly after the marriage began and participated in family counseling in the spring of 1987. The trial justice found that during the marriage and during the course of the divorce proceedings the parties engaged in a power struggle that destroyed any chance of achieving a harmonious coexistence. Moreover, they took hard positions on many insignificant decisions and refused to compromise or to work out any sort of accommodation when differences arose. The trial justice found no specific evidence of fault on the part of either party but noted that their failure to communicate led to the final separation.

There was one child born of the marriage, Annika. At the time of the trial in September 1991, the wife was forty years old, the husband was thirty-five years old, and Annika was three years old. The parties were awarded joint custody of Annika with physical possession granted to the wife with specific rights of visitation allowed to the husband.

The husband and the wife owned residential real estate in North Smithfield with a fair market value of approximately $137,000 and a mortgage balance of $108,000 at the time of the trial. The husband was awarded a 60 percent interest in the marital domicile, and the wife was awarded a 40 percent interest.

The husband is a licensed chiropractor and has been engaged in that profession since one year prior to the marriage of the parties. The husband's annual income was found by the trial justice to be $126,904 at the time of the trial. Relying on the testimony of Joseph Russolino (Russolino), a certified public accountant, the trial justice found that the fair market value of the husband's chiropractic practice at the time of trial to be $134,463, including good will which was valued at $102,991. The court also found that the husband's practice had little or no market value prior to the marriage and that the value of

the practice was a result of the joint efforts by both parties. He therefore ordered that the parties share equally in the value of the practice.

The wife holds both undergraduate and master's degrees in education and is certified to teach in the State of Illinois. She was found by the trial justice to be capable of becoming certified in Rhode Island within a period of two years. If she did not pursue Rhode Island certification and was available to work full-time, the wife's annual earning capacity at the time of trial was estimated to be $17,000.

The trial justice awarded the marital domicile to the wife and the chiropractic practice to the husband. To accomplish the equal division in the husband's practice and to provide the wife with 40 percent of the equity in the marital domicile, the trial justice ordered the husband to convey a balance of $49,531.50 to the wife by paying the mortgage on the marital domicile at a rate of $303 per week until the mortgage principle was reduced by $49,531.50.

The husband was also ordered to pay $327 per week to the wife in alimony for a period of three and one-half years and $250 per week in child support. Other orders were included in the judgment of divorce which we do not recite in this opinion because the parties do not dispute their propriety.

Both parties raise several arguments on appeal. We shall first address the arguments raised by the husband in the order in which they are presented in his appellate brief.[1] We next shall turn to the remaining arguments advanced by the wife in her cross-appeal. Further facts will be supplied in later portions of this opinion.

In the husband's first assertion of error on appeal, he argues that the trial justice erred in failing to recuse himself on the basis of his personal relationship with Russolino. He further alleges that the "trial justice's undisguised boiling blood" revealed a high degree of favoritism toward the wife, making a fair

1. The issue of the wife's attorney's fees is raised by both parties. We shall address this issue during our discussion of the husband's appeal.

judgment impossible. We find both arguments meritless from the record before us on appeal.

■ We shall first address the husband's contention that the trial justice erred in not recusing himself on the basis on his relationship with Russolino. During the course of the divorce proceedings a Family Court justice other than the trial justice in the instant case recommended that the parties retain Russolino as an impartial expert witness to determine the value of the husband's chiropractic practice. Thereafter, during the course of the trial, before Russolino testified, the trial justice advised the parties that he had attended school with Russolino and that Russolino had previously testified before him on several occasions. Counsel for the husband informed the court that he wanted an opportunity to speak with the husband before he advised the court whether to proceed. The next day court resumed, counsel for the husband indicated that after speaking with the husband, he would not seek the trial justice's recusal. The trial justice then indicated that he would not recuse himself, and he further stated that "Russolino did some projections for me when I was practicing law. I have no personal familiarity with him at all." The hearing then resumed without further mention of this issue, and Russolino subsequently testified.

■ The husband contends that the trial justice did not fully apprise the parties of his relationship with Russolino until after the parties agreed not to seek his recusal. We are not persuaded that the husband may raise this issue now on appeal since he presented no objection with regard to the trial justice's participation in the instant case either after the trial justice had informed the parties that he had used Russolino's services while he was in private practice or at any other time during the proceedings. It is well settled that matters not brought to the trial justice's attention will not be reviewed by us on appeal. *State v. Tempest,* 651 A.2d 1198, 1216 (R.I.1995) (citing *632 Metacom Associates v. Pub Dennis of Warren, Inc.,* 591 A.2d 379, 381 (R.I.1991)). Hence the subject of the trial justice's recusal may not be raised on appeal. *Tempest,* 651 A.2d at 1216.

■ We further reject the husband's contention that the trial justice's "boiling blood" prevented him from rendering a fair and impartial decision. During the trial justice's rendition of his oral decision, he stated that the husband had committed perjury during the course of the proceedings. Later the trial justice stated:

"I have had to break from this case on a number of occasions to restrain myself from taking action against the [husband] in light of his attitude toward the Court and towards [the wife's] counsel. Frankly I was not quite sure which, but rather than getting into it with him I chose to break each time *I felt my blood was starting to boil.*" (Emphasis added.)

The husband avers that that remark demonstrates the trial justice's favoritism toward the wife and his antagonism toward and personal prejudice against him. We disagree.

This court has commented that

"[a] charge that the trial justice was so prejudiced as to impair the fairness and impartiality of the trial is serious. Therefore, the person alleging prejudice carries a substantial burden. * * * One asserting prejudice must establish that the actions of the trial justice were affected by facts and events which were not pertinent nor before the court." *Lavey v. Lavey,* 551 A.2d 692, 696 (R.I.1988) (quoting *State v. Nidever,* 120 R.I. 767, 769–70, 390 A.2d 368, 370 (1978)).

In the instant case it should be noted that at no time did the husband seek a mistrial or in this instance ask that the trial justice recuse himself. The claim of prejudice comes only after the trial justice rendered his oral decision. We find no evidence of record which would warrant any inference that the trial justice's rulings were based on bias rather than on the evidence established during the proceedings. We therefore reject the husband's contention that the trial justice erred in not recusing himself.

■ The husband next argues that the trial justice erred as a matter or law when he denied the husband's motion in limine to bar testimony of the good-will evaluation per-

formed by Russolino of the husband's chiropractic practice. We agree.

After considering the testimony of Russolino, the trial justice determined that the husband's chiropractic practice had a value of $134,463, which amount included good will with a value of approximately $102,991 and net tangible assets with a value of approximately $31,472. Russolino employed the "formula method" in his valuation of the practice, which is a two-stage valuation technique that combines the adjusted-book-value method with a valuation of the intangible assets of the business, using an updated version of Internal Revenue Service Appeals and Review Memoranda 34 and Revenue Ruling 68–609. This method measures the value of good will in the practice. The procedure for valuing good will involved the compilation of the husband's annual tax returns for the five years ending December 31, 1990, and certain industry data as provided by the American Chiropractic Association. The computation of good will was determined by applying a weighting factor to each year's excess earnings. A capitalization rate of 33⅓ percent was then applied to weighted average excess earnings in order to arrive at a value for good will.

■ We are of the opinion that the trial justice erred in denying the husband's motion in limine to preclude Russolino's testimony regarding the good-will value of his practice. The capitalization of earnings of a professional practice on the basis of the services of a single individual in order to arrive at a good-will factor in ascertaining the value of such practice is improper as a matter of law. *Gibbons v. Gibbons*, 619 A.2d 432, 434 (R.I.1993) (citing *Powell v. Powell*, 231 Kan. 456, 648 P.2d 218 (1982); *Hanson v. Hanson*, 738 S.W.2d 429 (Mo.1987); *Nail v. Nail*, 486 S.W.2d 761 (Tex.1972); *Sorensen v. Sorensen*, 839 P.2d 774 (Utah 1992); *Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343 (1981)). Accordingly, we conclude that the trial justice erroneously included the value of good will in determining the total value of the husband's practice subject to distribu-

tion. We therefore reverse the trial justice's decision awarding the wife a 50 percent interest in the good-will value of the practice and reduce the wife's total award by $51,495.50, which amount represents the 50 percent share in the good-will value of the practice erroneously awarded by the trial justice.

■ We next consider the husband's contention that the trial justice erred as a matter of law in awarding the wife alimony for a period of three and one-half years at a weekly rate of $327. Awards of alimony require the trial justice to evaluate the evidence in view of the several factors set forth in G.L.1956 (1988 Reenactment) § 15–5–16.[2] The factors a trial justice must consider in determining the amount of alimony are "the length of the marriage; the conduct of the parties during the marriage; the health, age, station, occupation, amount and source of income, vocational skills, and employability of the parties; and the state and liabilities and needs of each of the parties." *Id.*

■ This court has indicated that alimony is a "rehabilitative tool designed to provide support for a dependent spouse and is based upon need." *Wrobleski v. Wrobleski*, 653 A.2d 732, 734 (R.I.1995) (quoting *Ramsbottom v. Ramsbottom*, 542 A.2d 1098, 1100 (R.I.1988)). We have also noted "that findings of fact by a trial judge in a divorce action will not be disturbed unless the judge misconceived the relevant evidence or was otherwise clearly wrong." 653 A.2d at 734.

In the instant case the trial justice considered each of the statutory factors in determining that the wife was entitled to temporary rehabilitative alimony. The trial justice considered the income of the parties and noted that the wife was substantially unemployed and that the husband had weekly earnings of $2,442. The trial justice found that the wife's rehabilitation would be obtained sooner if she focused on obtaining teacher certification in this state. The trial justice further noted that using reasonable efforts, the wife could provide Annika with almost full-time care and become self-sus-

---

**2.** General Laws 1956 (1988 Reenactment) § 15–5–16 was recently amended by P.L.1993, ch. 78, § 1. The new version of the statute applies to

cases filed on or after July 7, 1993. Because the instant case was filed in 1989 we use the earlier version in our analysis.

taining within a period of three and one-half years. He therefore ordered the husband to pay the wife weekly alimony in the amount of $327 for a period of three and one-half years, which he deemed a "bare-bones" support order. The trial justice in considering all the factors set forth in the statute acted well within his discretion in making the award. *Id.*

 The next issue we shall address is the propriety of the award of attorney's fees to the wife. Both parties argue that the trial justice erred in awarding the wife $27,300 in counsel fees. The husband contends that the wife pursued frivolous and meritless claims and should be precluded from receiving attorney's fees entirely. The husband further argues that the general master [3] erroneously awarded the wife attorney's fees pendente lite in the amount of $5,000. The wife avers that the trial justice erred in not awarding her the entire amount of fees she requested in the sum of $54,398. She contends that the trial justice improperly limited the fee award and penalized her for her attorney's performance of her legal and ethical duty to provide competent representation. We affirm the trial justice's award of attorney's fees.

In his decision the trial justice found that $27,300 was a reasonable fee for the wife's counsel and that the wife was without funds to pay it. He also found that the husband had excess funds in the amount of $150 per week from which he had the ability to pay counsel fees. He therefore ordered that the husband pay the wife's counsel fees in the amount of $150 per week for a period of three and one-half years, without interest. During his discussion of this issue, the trial justice rejected the wife's request for counsel fees in the amount of $54,398. Although the wife presented evidence of the reasonableness of her counsel fees, the trial justice found that the wife's counsel was overly prepared for the trial and had performed significant research on issues that did not "bear any fruit." He opined that there are reasonable limits to the amount of preparation which should be allowed. The trial justice indicated that 273 hours at $100 per hour

was in his judgment eminently fair, reasonable, and credible.

 Pursuant to § 15–5–16, the Family Court has the authority to order one spouse to pay the counsel fees of the other spouse. However, prior to making such an award, the trial justice must determine that the party from whom payment is sought has sufficient financial ability to pay such fees and that the spouse seeking payment is without property available for that purpose. *Casey v. Casey,* 494 A.2d 80, 84 (R.I.1985) (citing *Tarro v. Tarro,* 485 A.2d 558, 564 (R.I. 1984)). This court has stated that a trial justice presiding in a divorce proceeding acts within the limits of judicial discretion in fixing the amount of attorney's fees and, absent judicial abuse, this court will not review the exercise of such discretion. *Gartner v. Gartner,* 79 R.I. 399, 408, 89 A.2d 368, 374 (1952). In fixing the amount of the award, the trial justice is not bound by the opinions of attorneys in regard to the value of the services rendered but should exercise his or her own independent judgment since he or she has the requisite skill and knowledge to form a reasonably correct idea of what is fair and reasonable compensation. *Id.*

In the instant case the trial justice made a specific finding that the wife was without funds to pay her counsel fees and that the husband had sufficient financial ability to pay them. Moreover, because he presided over the proceedings, the trial justice was in the best position to evaluate the reasonableness and fairness of the award of counsel fees to the wife in light of the particular circumstances of this case. We cannot say that the trial justice abused his discretion in fixing the amount of the award. We therefore affirm the trial justice's award of $27,300.

 We further reject the husband's argument that the general master erred in awarding attorney's fees pendente lite to the wife in the amount of $5,000. This court has stated that the Family Court has the power to award counsel fees during the pendency of the appeal or after the death of a party. *Centazzo v. Centazzo,* 556 A.2d 560, 562 (R.I.

---

3. The wife's motion for attorney's fees pendente lite was granted by a Family Court general master and not by the trial justice who presided over the divorce trial.

1989). The husband sets forth no facts which would demonstrate an abuse of discretion by the general master, whose order is therefore affirmed.

We now turn to the cross-appeal of the wife wherein she argues that the trial justice erred as a matter of law in ruling that the husband's enhanced earning capacity from an advanced degree acquired during the marriage is not a marital asset subject to equitable distribution. She avers that the trial justice erroneously barred her expert witnesses from testifying about the value of the husband's enhanced earning capacity.

In August 1989, during the course of the marriage, the husband received the advanced degree, Diplomate of the American Board of Chiropractic Neurology, and became qualified to perform certain neurological tests which he was previously unable to conduct. During the trial the wife sought to present evidence through the testimony of expert witnesses concerning the value of the husband's advanced degree. The husband objected to the wife's proposed witnesses and through a motion in limine sought to preclude such testimony. The trial justice entered a written order in which he found as a matter of law that enhanced earning capacity is not a marital asset subject to equitable distribution. He therefore ruled that the proposed testimony of the wife's expert witnesses was inadmissible on the basis that it was irrelevant and immaterial.

General Laws 1956 (1988 Reenactment) § 15–5–16.1(a) governs the distribution of marital assets by the Family Court and provides:

"In addition to or in lieu of an order to pay alimony made pursuant to a complaint for divorce, the court may assign to either the husband or wife a portion of the estate of the other. In determining the nature and the value of property, if any, to be assigned, the court after hearing the witnesses, if any, of each party shall consider the length of the marriage, the conduct of the parties during the marriage, and the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates, and the contribution and services of either party as a homemaker. The court may not assign property or an interest therein held in the name of one of the parties if the property was held by the party prior to the marriage, but may assign income which has been derived therefrom during the term of the marriage and the court may assign the appreciation of value from the date of the marriage of property or an interest therein which was held in the name of one party prior to the marriage which increased in value as a result of the efforts of either spouse during the marriage. The court also shall not assign property or an interest therein which has been transferred to one of the parties by inheritance before, during, or after the term of the marriage. The court shall not assign property or an interest therein which has been transferred to one of the parties by gift from a third party before, during, or after the term of the marriage." [4]

The issue before us is one of first impression, namely, whether the enhanced earning capacity of one spouse from an advanced degree acquired during the marriage is marital property subject to equitable distribution under § 15–5–16.1. Following our examination of the overwhelming majority of other jurisdictions that have addressed this issue directly, we are persuaded that a professional degree or license is not marital property subject to distribution upon dissolution of the marriage.

In *In re Marriage of Graham,* 194 Colo. 429, 432, 574 P.2d 75, 77 (1978), the Colorado Supreme Court held that an educational degree, such as a master's degree in business administration, is not marital property. In making its determination, the *Graham* court relied on the nonproperty characteristics of

4. Under the 1992 amendment (P.L.1992, ch. 269, § 2) of G.L.1956 (1988 Reenactment) § 15–5–16.1, in making an equitable distribution award, the court may consider "[t]he contribution by one (1) party to the education, training, licen-sure, business, or, increased earning power of the other." This factor is not included in the earlier 1988 Reenactment of the statute, which applies to the instant case.

an educational degree. The *Graham* court stated:

"An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of 'property.' It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term." *Id.*

In *Drapek v. Drapek,* 399 Mass. 240, 246–47, 503 N.E.2d 946, 950 (1987), the Supreme Judicial Court of Massachusetts held that the husband's medical degree and enhanced earning capacity were not part of his estate subject to division and the lower court's assignment of such was error. The *Drapek* court refused to hold that the present value of future earned income was subject to division under Mass.Gen.Laws Ann. ch. 208, § 34, because to do so would have involved too much speculation. *See* 399 Mass. at 244, 503 N.E.2d at 949. Moreover, the *Drapek* court opined that adopting a rule that would subject the degree's value to distribution upon divorce would eliminate consideration of the effect of future events on the professional's earning capacity. *Id.* Because a property settlement is not subject to modification like alimony, the *Drapek* court was concerned about the ramifications of future events. *Id.* The *Drapek* court refused to include a professional degree as a marital asset because assigning a present value to a professional degree would involve evaluating the speculative earning potential of the holder. *Id.* Numerous other state courts have similarly held that a professional degree or license is not marital property. *See, e.g., In re Marriage of Olar,* 747 P.2d 676, 680 (Colo. 1987); *In re Marriage of Weinstein,* 128 Ill.App.3d 234, 244, 83 Ill.Dec. 425, 433, 470

N.E.2d 551, 559 (1984); *Archer v. Archer,* 303 Md. 347, 357, 493 A.2d 1074, 1080 (1985); *Davey v. Davey,* 415 N.W.2d 84, 88 (Minn.Ct. App.1987); *Mahoney v. Mahoney,* 91 N.J. 488, 505, 453 A.2d 527, 536 (1982); *Stevens v. Stevens,* 23 Ohio St.3d 115, 120, 492 N.E.2d 131, 135 (1986); *Pacht v. Jadd,* 13 Ohio App.3d 363, 365, 469 N.E.2d 918, 921 (1983); *Hodge v. Hodge,* 513 Pa. 264, 268, 520 A.2d 15, 17 (1986); *Martinez v. Martinez,* 754 P.2d 69, 75 (Utah.Ct.App.), *cert. granted,* 765 P.2d 1277 (Utah 1988); *Hoak v. Hoak,* 179 W.Va. 509, 370 S.E.2d 473, 474 (1988); *Grosskopf v. Grosskopf,* 677 P.2d 814, 822 (Wyo. 1984); *see generally,* Brenda Ruel Sharton, Comment, *Spousal Interest in Professional Degrees: Solving the Compensation Dilemma,* 31 B.C.L.Rev. 749 (1990).

New York is the only state whose highest court has determined that a professional degree is marital property. *O'Brien v. O'Brien,* 66 N.Y.2d 576, 489 N.E.2d 712, 498 N.Y.S.2d 743 (1985). In that case, the New York Court of Appeals held that a license to practice medicine acquired during the marriage, was marital property subject to equitable distribution. *Id.* at 580–81, 489 N.E.2d at 713, 498 N.Y.S.2d at 744. The court reasoned that the value of the professional license, as marital property, was the enhanced earning capacity it afforded the holder and that the spouse who worked while the other attended school was entitled to an equitable portion of the license. The court found a clear legislative mandate to include an interest in a profession or a professional career as marital property pursuant to § 236(B)(1)(6) of the New York Domestic Relations Law. That section provided that the court, in distributing the marital property should consider contributions and expenditures made to the career of the spouse. 66 N.Y.2d at 584, 489 N.E.2d at 715–16, 498 N.Y.S.2d at 746–47.

■ We find that professional degrees and licenses and the resulting enhanced earning capacity of the holder spouse is not a marital asset subject to equitable distribution under § 15–5–16.1. The value of a professional degree or a license may not be included in the distribution of marital assets upon the dissolution of a marriage. To embrace a

rule that would subject such an item to distribution upon dissolution would result in the foreclosure of consideration of the effect on the individual's earning capacity of such future events as death, illness, or unpredictable market variables. *Drapek,* 399 Mass. at 244, 503 N.E.2d at 949. It is our opinion that it is improper to capitalize or apportion future enhanced earning capacity in order to obtain a present value for distribution of marital assets. We therefore affirm the trial justice's decision finding as a matter of law that enhanced earning capacity is not subject to *equitable distribution under § 15–5–16.1 and* his decision barring the wife from presenting testimony about the husband's enhanced earning capacity resulting from his advanced degree.

For these reasons the husband's appeal is sustained in regard to the issue of good will. We reduce the wife's total award in the amount of $51,495.50, which amount represents the 50 percent share of the good will erroneously awarded. We deny and dismiss the remainder of the husband's appeal, and we deny and dismiss the wife's cross-appeal. The papers of this case are remanded to the Family Court.