Jo–Ann MATTERA

v.

Steven A. MATTERA et al.

No. 93–91–Appeal.

Supreme Court of Rhode Island.

Jan. 22, 1996.

Carolyn Barone and Lauri S. Medwin, for Plaintiff.

Jerry McIntyre and David J. Strachman, for Intervenor.

Donald R. Lembo, for Defendant.

## OPINION

LEDERBERG, Justice.

This matter came before the Supreme Court on the appeals of Steven A. Mattera (defendant), Nancy L. Mattera and Pilgrim Motors, Inc. (intervenors), and Jo–Ann Mattera (plaintiff) from various decisions and orders entered in the Family Court in a divorce action between the plaintiff and the defendant. On appeal, the defendant challenged the following: the award of sole custody of the parties' only child to the plaintiff, the amount of child support he was directed to pay, the assignment of marital property between the parties, and the award of attorney's fees to the plaintiff. The intervenors contended that the general master erred in determining the ownership interest of two corporate entities that he assigned as marital property. The plaintiff cross-appealed the amount of attorney's fees awarded to her

counsel. We affirm the judgment in part and modify it in part as follows: (1) we sustain the granting of the divorce, the award of the marital domicile to the plaintiff, the award of sole custody of the child to the plaintiff, the trial court's order that the defendant pay $45,000 in child-support arrearages, and the provision of health care coverage for plaintiff and child in accordance with the Family Court order, (2) we remand the case to the Family Court for a retrial on the assignment of all marital property involving the alleged interests of Nancy Mattera, and (3) we order that the Family Court reduce the amount of future child support to a level consistent with the child support guidelines. Further, because sufficient uncertainty exists regarding the general master's impartiality in this case, we direct that the retrial be held before a different judicial officer. The issue of counsel fees shall also be reconsidered at the retrial, where any changes in the assignment of marital property can be taken into account. A brief summary of the facts pertaining to the issues raised in these appeals follows; other relevant facts will be added during our discussion of the issues.

### Facts and Procedural History

The plaintiff and defendant were married on December 6, 1976; their child, Stephanie Ann Mattera (Stephanie), was born on November 6, 1979. On March 17, 1986, plaintiff filed a complaint seeking an absolute divorce on the statutory grounds of irreconcilable differences. On April 8, 1986, defendant filed a counterclaim for divorce, which he withdrew at trial. In accordance with an order arising out of a hearing before the Family Court on March 20, 1987, Pilgrim Motors, Inc., was made a party defendant in the divorce action.

The case was heard in a lengthy trial scheduled on various hearing days from March 19, 1990, to January 14, 1992. On June 16, 1990, Nancy Mattera was allowed to intervene, pursuant to Rule 24(a)(3) of the Rules of Procedure *for* Domestic Relations, *on the grounds* that she had an ownership interest in certain corporate entities to which plaintiff had laid claim.

In a bench decision rendered on April 24, 1992, plaintiff was awarded an absolute divorce on the grounds of irreconcilable differences. The trial court also awarded plaintiff sole custody of Stephanie, with defendant entitled to "any and all reasonable rights of visitation." The general master further ordered that defendant pay child support in the amount of $399 per week, pay $45,000 in past-due child support, provide health-care coverage for plaintiff for life or until she remarried, and provide health-care coverage for Stephanie until "at the very least" the age of nineteen. The general master then determined which assets constituted marital property for the purpose of equitable distribution, and after considering the length of marriage, the conduct of the parties, and the contribution of plaintiff to the accumulation of assets, he awarded 75 percent of the marital estate, including the marital domicile, to plaintiff and the remaining 25 percent to defendant.

By agreement of the parties, the question of attorney's fees was reserved, pending hearings and the presentation of expert testimony. After hearings on the matter of counsel fees, no decision was reached on this issue and on September 16, 1992, the general master entered his decision pending entry of final judgment. On October 1, 1992, defendant filed a timely notice of appeal from that decision, pursuant to G.L.1956 (1994 Reenactment) § 14–1–52.

Hearings on the issue of counsel fees resumed, and on March 11, 1993, an order was entered denying plaintiff's motion to assess counsel fees against intervenors. After further hearings, the general master, on March 23, 1993, entered an order awarding plaintiff's counsel an attorney's fee in the sum of $20,294.50 plus $10,436.18 in "reimbursement of out-of-pocket costs solely attributable to defendant."

The next day plaintiff filed a notice of appeal from the orders regarding counsel fees. On March 26, 1993, intervenors filed a notice of appeal from the trial court's decision of September 16, 1992, and from the trial court's order of March 23, 1993. On April 8, 1993, defendant filed a notice of appeal from the March 23, 1993 order.

On September 28, 1994, this Court docketed the appeals for full briefing and oral argument, and on October 14, 1994, this Court granted plaintiff's motion to strike intervenors' appeal from the September 16, 1992 decision pending entry of final judgment, on the grounds that the appeal was not timely filed. On October 27, 1994, however, we granted intervenors' motion for reconsideration and reinstated their appeal, subject to plaintiff's right to raise the timeliness issue in her brief and at oral argument.

**Custody Award**

On appeal, defendant challenged the award of sole custody of the parties' minor child to plaintiff. Our review of this issue is limited to considering whether the general master abused his discretion in granting sole custody of Stephanie to plaintiff. *Pettinato v. Pettinato*, 582 A.2d 909, 914 (R.I.1990). It is well settled that this Court's "lode-star principle requires that any custody determination be based on the best interests of the child." *Sammataro v. Sammataro*, 620 A.2d 1253, 1254 (R.I.1993) (citing *Burrows v. Brady*, 605 A.2d 1312 (R.I.1992)). "Provided that the trial court considers the best interests of the child, this court will not disturb the discretionary award of child custody." *Maroney v. Maroney*, 644 A.2d 827, 827–28 (R.I.1994) (citing *Cok v. Cok*, 479 A.2d 1184, 1189 (R.I.1984)). In *Pettinato*, we noted that "the best interests of the child standard remains amorphous and its implementation has been left to the sound discretion of the trial justices," 582 A.2d at 913. Nonetheless, in setting forth a nonexclusive list of factors to be considered when determining the best interests of the child, *id.* at 913–14, we have held that "[t]he trial justice must consider a combination of and interaction among all the relevant factors that affect the child's best interest." *Id.* at 914.

In the case before us, the trial court found "both parents to be fit and proper, *i.e.*, as to the love for said child and ability to care and provide for said child" but awarded sole custody to plaintiff, with defendant entitled to "any and all reasonable rights of visitation." The defendant contended that given the finding that both parents were "fit and proper" and in the absence of any specif-

ic finding that joint custody was not in the best interests of the child, the general master abused his discretion when he awarded sole custody to plaintiff. This Court has held that even in the event that "a trial justice fails to expressly articulate findings of fact we shall not refuse to accord the decision the persuasive force usually accorded such decisions on review, for the reason that implicit in a decision are such findings of fact necessary to support it." *Duke v. Duke*, 510 A.2d 430, 432 (R.I.), *cert. denied*, 479 U.S. 864, 107 S.Ct. 219, 93 L.Ed.2d 147 (1986) (citing *Kenney v. Hickey*, 486 A.2d 1079, 1082–83 (R.I.1985)).

Our careful review of the extensive record reveals that the general master weighed the relevant factors set forth in *Pettinato* and that his decision is replete with findings of fact to support his award of sole custody. For instance, in his decision pending entry of final judgment, the general master implicitly considered the moral fitness of the parties and found that plaintiff had been a "good and faithful wife" whose marital conduct was impeccable but also found that defendant's marital conduct included the abuse of alcohol and "a bigamous relationship with another female during the course of the within divorce proceedings." According to plaintiff's testimony, defendant visited Stephanie only sporadically. The trial court also found that defendant's marital conduct was "nothing less than horrendous" and that the parties are "unable to maintain an amicable relationship for the sake of the [child], and therefore, an order of joint custody would be detrimental to the well-being of the [child]." *Duke*, 510 A.2d at 432. We conclude that the trial court properly exercised its discretion in determining that joint custody was not in Stephanie's best interest and in awarding sole custody of the child to plaintiff.

**Child Support**

General Laws 1956 (1988 Reenactment) § 15–5–16.2(a) provides that the Family Court "may order either or both parents owing a duty of support to a child to pay an amount based upon a formula and guidelines adopted by an administrative order of the family court." The general master awarded child support in the amount of $399 per

week. The master arrived at this figure after first determining that application of the standard formula for computation of child support would yield an amount of $156 per week. This computation was made utilizing the trial master's findings that defendant's income is $70,000 per year, that plaintiff's income is approximately $30,000 per year, that defendant's reasonable and necessary expenses are $309.50 per week, and that the combined reasonable necessary living expenses of plaintiff and Stephanie are $799 per week.

■ It is well established that the appropriate award of child support is to be determined by the trial justice in his or her sound discretion, and we shall not disturb such a determination on review absent a clear abuse of that discretion. *Gibbons v. Gibbons,* 619 A.2d 432, 435 (R.I.1993); *Sullivan v. Sullivan,* 460 A.2d 1248, 1249 (R.I.1983); *Brierly v. Brierly,* 431 A.2d 410, 415 (R.I.1981). In *Gibbons,* the general master had found that the defendant was completely at fault for the termination of the marriage and "considered the standard of living that the children would have enjoyed had the marriage not been dissolved, the circumstances of the children and their educational needs, and the financial resources and needs of the noncustodial parent," 619 A.2d at 435. The master had determined the income of the defendant to be approximately $280,000 per year. *Id.* at 433. We concluded in *Gibbons* that the general master did not abuse his discretion in awarding $1,000 per child per month on the basis of these facts. *Id.* at 435.

■ In the case before us, the trial master determined that defendant's annual income was approximately $70,000, that is, one fourth of the income of the defendant in *Gibbons.* Yet here the general master awarded over $1,600 per month for the support of one child, compared to the award of $1,000 per month per child that we upheld in *Gibbons.* Both Administrative Order 87–2 of the Family Court and § 15–5–16.2 allow the Family Court to deviate from the worksheet guidelines after considering certain factors, *provided* the amount of support calculated in the prescribed worksheet is supported by a finding, based on the facts, that the recom-

mended child support order would not be inequitable to the child or to either parent. *Lembo v. Lembo,* 624 A.2d 1089, 1091 (R.I. 1993). Upon review of the record and of the general master's decision, we are of the opinion that the trial master abused his discretion in awarding child support in an amount significantly disproportionate to that prescribed by the formula without justifying his divergence from the guidelines. Therefore, we direct the Family Court to redetermine the amount of child support, which amount shall be paid prospectively from the date of this opinion. The Court may exercise its discretion to deviate from the guidelines in a manner consistent with the conditions delineated in § 15–5–16.2 and Family Court Administrative Order 87–2. We are of the opinion, however, that the general master did not err in calculating the child-support arrearages owed by defendant, pursuant to the August 12, 1986 court order in which a different trial justice directed defendant to pay $200 in weekly child support. Consequently, we sustain the trial court's order that defendant pay $45,000 in child-support arrearages.

### Assignment of the Marital Estate

■ We first consider plaintiff's contention that intervenors' appeal was not timely filed and is therefore not properly before this court. On March 26, 1993, intervenors filed their notice of appeal from the September 16, 1992 decision pending entry of final judgment and from the March 23, 1993 order that concluded the award of counsel fees. This Court will consider only cases in which all issues involving all parties have been addressed by other tribunals. The only exception to this rule occurs in those cases in which an express entry of a final judgment has been entered in accordance with Rule 54(b) of the Rules of Procedure for Domestic Relations. All parties conceded that the issue of attorney's fees was unresolved as of September 16, 1992, when the decision pending entry of final judgment was entered. The issue of counsel fees was a substantial one in this case, requiring no fewer than five separate hearings and involving an award of over $30,000. In such circumstances, it could not reasonably be concluded that all matters

in this case were resolved as of September 16, 1992. Because a Rule 54(b) motion was not entered, we conclude that the issues were not resolved until the order of March 23, 1993, was entered, at which time all issues in the case had been addressed. Therefore, intervenors appeal of March 26, 1993, was timely filed, and the issues raised therein will be considered in our review of the assignment of the marital estate.

■■ Before evaluating and distributing a marital estate, the trial justice must first separate the marital from the nonmarital assets. *Lepore v. Lepore*, 620 A.2d 1262 (R.I. 1993). On appeal, intervenor Nancy Mattera and defendant argued that the general master had erred in determining that Pilgrim Motors, Inc. (Pilgrim), and Matthew Realty, Inc. (Matthew), were marital assets subject to equitable distribution. This Court will not disturb a trial justice's findings unless it can be shown that the justice was clearly wrong or has overlooked or misconceived material evidence. *Lancellotti v. Lancellotti*, 481 A.2d 7, 10–11 (R.I.1984); *Wordell v. Wordell*, 470 A.2d 665, 667 (R.I.1984).

■ The record before us reveals that defendant's mother, Nancy Mattera, testified at trial that she was the sole owner of both Pilgrim and Matthew and that defendant had never owned shares in the corporation. She presented several witnesses on her behalf, including John Paterra, legal counsel for the Rhode Island Division of Taxation, and also presented documentary evidence that she was, at all relevant times, the sole owner of Pilgrim and Matthew. This evidence included stock certificates for both corporations, gift-tax and estate-tax returns, and the last will and testament of her late husband, John Mattera.

The record, however, is devoid of material evidence such as corporate resolutions or copies of stock certificates to establish that defendant had an ownership interest in Pil-

grim or Matthew. We note that although Pilgrim's 1983 corporate-tax returns and Matthew's 1984 corporate-tax returns do list defendant as a "stockholder" in those corporations during 1983 and 1984, subsequent tax returns do not attribute to defendant an ownership interest in either corporation. We further note that Robert Gelineau (Gelineau), a certified public accountant who prepared the corporate-tax returns for Pilgrim and Matthew, testified that the only stockholders were Nancy Mattera and her late husband. Gelineau admitted that he did alter certain of Matthew's tax returns by removing defendant's name, along with others, and listing the percentage of ownership interest, but he then invoked his Fifth Amendment privilege in regard to all other aspects of the case. Without Gelineau's testimony to explain the discrepancy in the tax-return evidence and absent more conclusive documentary evidence in support of plaintiff's position, we are not persuaded that the evidence before the trial master established by a fair preponderance of the evidence that defendant held ownership interests in Pilgrim and Matthew, particularly in light of the evidence suggesting that Nancy Mattera was the sole owner of the two corporations. For these reasons, we conclude that without additional evidence on the record to support his decision, the general master erred in determining that Pilgrim and Matthew were marital assets subject to equitable distribution. Consequently, we remand the case to the Family Court for further findings on the ownership interests of Pilgrim and Matthew and for a retrial on the assignment of all property involving the alleged interests of Nancy Mattera.

### Impartiality of Trial Master

■ Our examination of the record suggests that the general master did not act with impartiality in issuing his findings and orders in this case.[1] Such absence of impar-

---

1. The defendant contended that the general master engaged in "vile, venomous, and slanderous attacks" on defendant from the beginning of the trial. Although we conclude that the general master lacked sufficient objectivity to render a fair judgment in this case, we do not subscribe to defendant's characterization of the general master's conduct in this case as "vile," "venomous," or "slanderous." Faced with what he described as "one of the oldest pending cases in the annals of the history of the Rhode Island Family Court"—a case that had "languished in the Family Court for the last six years plus"—the general master deviated from impartiality. The record is devoid, however, of the malice that defendant has ascribed to the general master.

tiality will justify relief when the party seeking the relief can establish "that the trial justice had personal bias or prejudice by reason of a preconceived or settled opinion of a character calculated to impair his impartiality seriously and to sway his judgment." *Cavanagh v. Cavanagh*, 118 R.I. 608, 621, 375 A.2d 911, 917 (1977) (citing *State v. Buckley*, 104 R.I. 317, 322, 244 A.2d 254, 257 (1968)).

 In the instant matter, the general master indicated his disapproval of defendant throughout his findings of fact. He indicated, for example, that he found defendant's "marital conduct to be nothing less than horrendous," that he had "difficulty in believing any of the testimony of the defendant * * * and/or the believability in any documents filed by defendant," that defendant "had made every conceivable attempt to delay, confuse, and twist these divorce and trial proceedings," and that he viewed all testimony presented by defendant as "a colossal attempt to defraud the Court and plaintiff." In addition, during the trial the general master expressed his opinion that defendant was a liar and a bigamist. Although we recognize that the vitriol of this case and the behavior of defendant contributed to the general master's frustration, we are led to conclude that the general master's lack of impartiality did prejudice defendant. Therefore, we direct that the following issues be scheduled for retrial before a different judicial officer of the Family Court: (1) the amount of child support to be awarded prospectively from the date of this opinion, (2) the appropriate assignment of ownership of all property involving intervenor Nancy Mattera, and (3) the proper distribution of all marital property except the marital domicile, which, in the interest of the child, will remain in plaintiff's ownership and will be deducted from plaintiff's award.

In summary, we affirm the granting of the divorce, the award of the marital domicile to the plaintiff, the award of sole custody of the child to the plaintiff, the provision of health care coverage, and the trial court's order that the defendant pay $45,000 in child-support arrearages. We remand the case to the Family Court for retrial on the assignment of all marital property involving the alleged interests of Nancy Mattera and for the determination of future child support at a level consistent with the child-support guidelines. Because a sufficient question exists regarding the general master's impartiality in this case, we direct that the issues on retrial be heard before a different judicial officer. The issue of counsel fees shall also be reconsidered at the retrial, in light of any changes in the assignment of marital property.

The papers in the case may be returned to the Family Court for proceedings in accordance with this opinion.