Michael HOGAN

v.

Diane HOGAN.

No. 2002–5–Appeal.

Supreme Court of Rhode Island.

May 27, 2003.

Jerome V. Sweeney, IV, Pawtucket, for Plaintiff.

Christine L. McBurney, Pawtucket, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The plaintiff, Michael Hogan (husband), appeals from the denial of his timely filed motion to amend a Family Court decision pending the entry of a final judgment of divorce from his wife, the defendant Diane Hogan (wife). We treat such appeals "as an appeal from the [decision] itself, as well as presenting for review the correctness of the ruling on the motion." 1 Kent, *R.I. Civ. Prac.* § 60.10 at 456 (1969).

The parties married on August 15, 1987, and two children were born during their marriage: Eric (born in 1991) and Mikayla (born in 1994).[1] On appeal, the husband objects to the Family Court's alimony and child-support award, its visitation order, its order requiring him to pay the wife $2,000 with respect to a credit-card charge, and the court's award of certain counsel fees

---

1. Although the record contains various spellings for the name of the parties' daughter, we adopt the version that appears to be the most prevalent: namely, Mikayla. The year of birth for the parties' son, Eric, appears throughout the record as either 1991 or 1992. At trial, the mother indicated through her attorney that the correct year of birth was 1991. Thus, we shall use 1991 as Eric's year of birth.

and deposition costs to the wife. A single justice of this Court ordered the parties to show cause why we should not decide the appeal summarily. Because they have not done so, we proceed to resolve the appeal at this time.

The husband first argues that the magistrate who heard and decided this divorce case abused his discretion when he added 20 percent to the amount set forth in the court's child-support guidelines and ordered the husband to pay this amount to the wife. The final judgment[2] provides that, "[a]fter arriving at the base child support based upon the guidelines, the [c]ourt hereby orders an additional 20 percent to be added to the base to arrive at the child support amount that plaintiff is obligated to pay and said amount shall be via wage garnishment." The husband asserts that the magistrate should have made appropriate findings of fact to support a child-support award exceeding the guidelines. We agree.

The Family Court possesses only the jurisdiction conferred upon it by the Legislature. Thus, its ability to compel the parties to pay child support is limited by the statutory authority that the Legislature has conferred on that court. *Pierce v. Pierce*, 770 A.2d 867, 871 (R.I.2001) (citing *Carr v. Prader*, 725 A.2d 291, 293 (R.I.1999) and *Olivieri v. Olivieri*, 760 A.2d 1246, 1251 (R.I.2000) (per curiam)). Because the guidelines constitute a baseline for all child-support orders, a Family Court trial justice only may "deviate from the recommended child-support order if he or she finds that the calculated amount would be inequitable to the child or to either parent." *Lembo v. Lembo*, 677 A.2d 414, 418 (R.I.1996).

Here, the magistrate failed to make any findings supporting his decision to increase the wife's child-support award beyond the guideline recommendation. As the magistrate put it:

"So what I've done, and this is not an issue that's been tried by the Supreme Court, maybe if you go up we will test it once and for all, the 20 percent tack on I use and I follow that theory that I use a 40 hour per week basis for the obligor and to that tack on 20 percent which generally speaking is somewhat of a minimal number and allow that person if in fact they are working overtime to retain all portions of the overtime that he or she earns."

This Court has held in *Mattera v. Mattera*, 669 A.2d 538, 542 (R.I.1996), that the Family Court's Administrative Order No. 87–2 and G.L.1956 § 15–5–16.2 "allow the Family Court to deviate from the worksheet guidelines after considering certain factors, provided the amount of support calculated in the prescribed worksheet is supported by a finding, based on the facts, that the recommended child support order would not be inequitable to the child or to either parent." This Court will not disturb such a determination on review absent a clear abuse of discretion. *Mattera*, 669 A.2d at 542. In this case, however, we hold that the magistrate abused his discretion because he failed to make any specific findings concerning the equities of this particular situation to support his decision to increase child support beyond the amounts recommended in the guidelines. Indeed, the magistrate said that it was his

---

2. The record on appeal contained no amended decision pending the entry of a final judgment, only the final judgment itself. Because the terms of the final judgment are consistent with the magistrate's previous ruling on the motion to amend, we refer herein to the final judgment as embodying the court's amended decision pending the entry of the final judgment.

uniform practice to add 20 percent to the child-support amount prescribed by the guidelines in an effort to allow a person working over forty hours a week to "retain all portions of the overtime that he or she earns." The magistrate's uniform "one size fits all" approach of awarding a fixed additional percentage of child support, however, is unacceptable under *Mattera* absent case-specific findings justifying such a "20 percent tack on" to the appropriate guideline amount for child support. *See id.* Thus, we sustain this aspect of the husband's appeal, vacate the 20 percent tack-on portion of the child-support award, and remand this case for a new hearing, new findings, and a new order on what amount of child support is appropriate under the specific circumstances of this case.

■ The husband next argues that the magistrate compounded his error by ordering the husband to pay the wife one-half of the net wages the husband earns in overtime as alimony. Specifically, the final judgment provides:

"6. Pursuant to R.I.G.L. § 15–5–16, [husband] is hereby ordered to pay in the form of alimony one half of all net wages available to him above $517 per week net from his primary employment based upon a 40 hour per week term and [husband] is hereby ordered to apprise [wife] of his income from all sources on a quarterly basis and by review of his IRS tax returns annually and failure to do so will result in the imposition of sanctions and counsel fees if it becomes necessary to file a motion to adjudge in contempt and [husband] is not obligated to pay alimony unless he does in fact work overtime on a voluntary basis or has an increase in his wages.

"7. The aforesaid alimony award is to continue indefinitely until [wife's] needs are met on a weekly basis and receipt of any income from the Federal program by [wife] would obviously modify the order downward."

The magistrate reached his decision after considering the criteria set out in § 15–5–16 and in this Court's *Farrelly v. Farrelly*, 706 A.2d 1320, 1321 (R.I.1997) (mem.), decision. He noted that the wife, who suffers from multiple sclerosis, has two young children and that her illness compromises her ability to work. Thus, he decided that it was appropriate to award her alimony for an indefinite period. He also considered that based upon the figures provided to the court, the husband was living "$60 per week short." Nevertheless, he ordered that "in view of the statute and the possibility of other income becoming available to the [husband], he will be obligated to pay one-half of all net wages available to him above the $[517] per week net from his primary source." [3]

■ In awarding alimony, "[e]arnings [are] but one of a myriad of factors that the trial justice weigh[s] and evaluate[s] * * *." *Berard v. Berard*, 749 A.2d 577, 581 (R.I.2000) (per curiam) (quoting *Whited v. Whited*, 478 A.2d 567, 570 (R.I.1984)). As long as the trial justice considers the statutory elements in § 15–5–16, we will not disturb an alimony award on appeal. *Berard*, 749 A.2d at 581. In this case, the magistrate considered the appropriate factors in deciding to award alimony. In particular, he took into account that the wife suffered from an illness that materially limited her ability to work and that would cause her physical health to become progressively worse. In addition, the evidence indicated that the husband often

**3.** Although the magistrate initially set the husband's earnings cap before alimony at $406, he later amended his decision to reflect a weekly earning cap of $517. This new monetary amount is reflected in the final judgment of divorce.

worked more than forty hours per week. After considering these facts, the magistrate awarded alimony to the wife that was contingent on the husband's overtime earnings, or those "net wages available to him above the [$517] per week net from his primary * * * employment based upon a forty hour per week term." This was a discretionary call, and it does not appear to us that the magistrate abused his discretion.

■ Next, the husband argues that it was an abuse of discretion for the magistrate to order him to pay defendant's counsel fees and the costs related to deposing the wife's physician. The decision to award attorney fees or costs is governed by § 15–5–16, which provides the Family Court with the authority to order one spouse to pay the counsel fees of the other if the court "determine[s] that the party from whom payment is sought has sufficient financial ability to pay such fees and that the spouse seeking payment is without property available for that purpose." *Becker v. Perkins–Becker*, 669 A.2d 524, 529 (R.I.1996); see also *Marocco v. Marocco*, 571 A.2d 572, 574 (R.I.1990) (per curiam).

Here, the magistrate said he was awarding counsel fees and deposition costs to the wife based on his impression that the husband "seemed to ignore or deny * * * that the [wife] has MS" and because "his insensitivity [was] one of the reasons for the divorce." Notwithstanding the apparent punitive tenor of these remarks, the magistrate's decision did take into account the parties' respective abilities to pay counsel fees and related litigation costs. According to their testimony, both parties had limited resources. Nevertheless, given the latitude accorded to trial justices under § 15–5–16(b)(2)(ii)(G) to take into account "[a]ny other factor which the court expressly finds to be just and proper" when

awarding counsel fees, we are unable to conclude that the magistrate's decision on this issue constituted an abuse of discretion, especially when he duly referred to the appropriate statute authorizing such a discretionary award of counsel fees and related costs when making his decision on these matters. Thus, we decline to vacate this part of the order.

■ The husband next argues that it was error to require him either to host the children on overnight visits or alternatively to provide a sitter for them. Specifically, the final judgment states:

"Moreover, [husband] is awarded every other weekend with the children as well as week nights to be agreed upon by the parties. In the event [husband] is unable to have the children overnight, it will be [husband's] obligation to provide a babysitter for them or to pay additional money to the [wife] in order to secure a babysitter for them."

In his prebriefing and supplemental statements, the husband asserts that the magistrate's decision was akin to ordering him into involuntary servitude. But in cases in which one parent has been ordered to generate income to support the children, other courts have been reluctant to hold that such an arrangement qualifies as involuntary servitude. *See, e.g., Freeman v. Freeman*, 397 A.2d 554, 557 n. 2 (D.C.1979) (explaining that no violation of the constitutional prohibition against involuntary servitude occurred when a trial court ordered husband to seek gainful employment); *Warwick·v. Warwick*, 438 N.W.2d 673, 679 (Minn.Ct.App.1989) (holding that a trial court's order requiring husband to seek and obtain employment did not violate constitutional prohibitions against involuntary servitude).

In any event, it is the husband's position that he does not have the ability to host overnight visitation with his children be-

cause he resides with his brother's family and there is not enough room at his brother's residence to accommodate overnight visits with his children.

Visitation is controlled by § 15–5–16(d)(1), which states that the court shall provide for the "reasonable right of visitation." In regulating custody, Rhode Island law requires consideration of the best interests of the children. *See, e.g.*, § 15–5–16(d)(2)(3) and (g)(1). *See also Logan v. Logan*, 763 A.2d 587, 589 (R.I.2000) (per curiam). Here, however, the magistrate seemed more concerned about the best interests of the wife than the impact of the visitation order on the children. Thus, when he justified his decision, he ruled that "[b]oth [husband] and [wife] are entitled to a life of their own beyond this divorce. The [wife] may well need some leisure time as a result of her medical condition." Furthermore, he explained, "[the wife] is entitled to a life of her own as well as a respite from her responsibilities of caring for the children. [The husband] presently has no restrictions on his everyday life." The troubling part about the magistrate's decision, however, is that he failed to focus expressly on the best interests of the children when ruling on the visitation arrangements. The only evidence about the accommodations available to the children if they were to spend the night with the husband was the husband's testimony that he currently is staying at a place where there is no room for the children to stay overnight. Thus, we are of the opinion that the magistrate abused his discretion by ordering the husband to accommodate overnight visits for the children or to pay for a baby-sitter—primarily as a means of providing a respite for the wife—especially in light of the husband's unrebutted testimony that there was no room for the children to stay where he was living. Accordingly, we vacate this part of the order and remand for a new hearing,

findings, and order concerning visitation with directions for the Family Court on the remand to focus on and advert to the best interests of the children when establishing the visitation arrangements.

 Last, the husband argues that it was an abuse of discretion for the magistrate to order him "to pay [the wife] Two Thousand ($2,000.00) Dollars representing a VISA charge that was incurred at the time that his automobile was purchased." Section 15–5–16.1 governs the equitable distribution of marital property. Such an order will be overturned by this Court only if the assignment constitutes an abuse of discretion. *Stanzler v. Stanzler*, 560 A.2d 342, 345 (R.I.1989); *see also Olivieri v. Olivieri*, 760 A.2d 1246, 1250–51 (R.I.2000). The husband testified that he used a $700 advance from the wife's credit card to pay for the taxes and registration fees that were due when he purchased a new truck. Moreover, the wife explained that the husband used her credit card to make repairs on her 1989 Oldsmobile before it was sold and then used the proceeds from the sale of that vehicle, $2,500, to pay off the balance due on his own credit card. In addition, according to the wife, the husband used a $1,400 cash advance on the wife's credit card to register and pay taxes due on his new truck.

In dividing the marital estate, the magistrate determined that there was no compensable fault on the part of either party. Therefore, he decided that each party would be entitled to 50 percent of the marital estate. In addition, however, mindful of the above-referenced transactions, he allowed the husband to keep his new truck, but ordered him to pay $2,000 to the wife for the expenses he incurred in connection with that vehicle's purchase. Under the circumstances, in light of the wife's illness and the husband's ability to

earn extra income, we conclude that this portion of the final decree did not constitute an abuse of discretion.

## Conclusion

For these reasons, we deny the husband's appeal in part and sustain it in part. We sustain the appeal with respect to the child-support award—vacating only the 20 percent add-on portion of that award—and remand for a new hearing, findings, and order on the appropriate amount of child support that the husband should pay to the wife. Any deviations from the child-support guidelines must be supported by specific findings justifying such a variance based upon the equitable and financial circumstances of this particular case, rather than upon some arbitrary, uniform "add on" percentage of the guideline amount of child support. We next deny the appeal with respect to the award of alimony, counsel fees, and deposition costs; therefore, we decline to vacate that part of the amended decision pending entry of a final judgment and the final judgment of divorce that ordered the husband to make such payments to the wife. But we also sustain the husband's appeal and vacate that part of the decision compelling him either to host the children at his brother's residence during days when he has visitation, or to pay for a baby-sitter. Thus, we remand for further proceedings and additional findings concerning these issues. We also vacate those portions of the final divorce judgment that are inconsistent with this decision. Finally, we deny the appeal with respect to the disputed credit-card charges and the $2,000 payout with respect to same. On remand, we direct the Family Court to enter a new order on child support and visitation after holding the requisite hearings and making the appropriate findings, and to enter a new final judgment of divorce consistent with its findings.